# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA | CASE NO. EDCV16-00128 PSG (SSx) |
| Plaintiff, | **[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER** |
| v. | |
| THE COUNTY OF SAN BERNARDINO, a California public entity | |
| Defendant. | |

| | |
|---|---|
| COUNTY OF SAN BERNARDINO, a California public entity | Courtroom:   6A<br>PTC Date:   July 24, 2017<br>PTC Time:   2:30 p.m. |
| Counterclaimant, | Honorable Philip S. Gutierrez |
| v. | Complaint Filed:  January 21, 2016 |
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania insurance company | Trial Date:  September 5, 2017 |
| Counterdefendant. | |

62880

1

2   Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS

3   ORDERED:

4   **1.    THE PARTIES**

5   The parties are plaintiff and counter-defendant The Insurance Company of the

6   State of Pennsylvania ("ICSOP") and defendant and counterclaimant the County of

7   San Bernardino (the "County").

8   Each of these parties has been served and has appeared.  All other parties

9   named in the pleadings and not identified in the preceding paragraph are now

10   dismissed.

11   The pleadings which raise the issues are ICSOP's First Amended Complaint

12   (Dkt. 81), the County's First Amended Answer (Dkt. 84), the County's Corrected

13   Counterclaim (Dkt. 16) and ICSOP's Answer to the County's Counterclaim (Dkt.

14   18).

15   ICSOP contends the Court has resolved ICSOP's first cause of action (Dkt.

16   45).  The County has asked the Court to reconsider and withdraw its decision (Dkt.

17   93).  A hearing is set for Friday, July 21, 2017 on this motion and two others: the

18   County's motion for partial summary judgment on notice; and ICSOP's motion for

19   partial summary judgment on the number of occurrences and attorneys' fees.

20   ICSOP is no longer pursuing its fourth cause of action for declaratory relief

21   regarding the duty to indemnify.  ICSOP also withdraws its first, third, twelfth and

22   thirteenth affirmative defenses. The County withdraws its first and thirteenth

23   affirmative defenses.

24   **2.    FEDERAL JURISDICTION AND VENUE**

25   Federal jurisdiction is invoked under 28 U.S.C. § 1332 because there is

26   complete diversity of citizenship between and among the County and ICSOP, and

27   the amount in controversy exceeds the sum or value of $75,000, exclusive of interest

28   and costs.  The facts requisite to federal jurisdiction are admitted.

Venue is invoked under 28 U.S.C. § 1391 because a substantial part of the

events giving rise to the claims asserted by the parties occurred in this district. Specifically, the underlying claims against the County were made in this district, and the insurance policies at issue were delivered to the County in this district.

### 3.   TRIAL TIME

The County estimates the trial will take seven trial days, depending on how the Court rules on the pending motions.  ICSOP estimates the trial will take eight trial days.

### 4.   JURY TRIAL

The trial is to be a jury trial.  Pursuant to the Court's May 3, 2016 Order for Jury Trial (Dkt. 23), thirty-five (35) days before trial, ICSOP will serve ICSOP's proposed jury instructions and special verdict forms on the County.  Twenty-eight (28) days before trial, the County will serve on ICSOP the County's objections to ICSOP's instructions together with any additional instructions the County intends to offer.  Twenty–one (21) days before trial, ICSOP will serve on the County ICSOP's objections to the County's instructions.  Twenty-one (21) days before trial, counsel will meet and confer to attempt to come to an agreement on the proposed jury instructions.

Sixteen (16) days before trial, counsel will file with the Court a joint set of jury instructions on which there is agreement.  At the same time, each party will file its proposed jury instructions which are objected to by the other party, accompanied by points and authorities in support of those instructions.

### 5.   ADMITTED FACTS

The following facts are admitted and require no proof:

a)   The County is, and at all times herein mentioned was, a county organized and existing under the laws of California.

b)   ICSOP is, and at all times herein mentioned was, a corporation organized and existing under the laws of Pennsylvania with its

62880

principal place of business in New York, and was authorized to
do business in California.

c)   ICSOP issued the following umbrella liability policies of
insurance to the County: 426-0772 (effective July 23, 1966 to
July 23, 1969) (the "66-69 ICSOP Policy"), 429-0989 (effective
July 23, 1969 to July 23, 1972) (the "69-72 ICSOP Policy") and
427-21195 (effective July 23, 1972 to July 23, 1975) (the "72-75
ICSOP Policy"). The 66-69 ICSOP Policy, the 69-72 ICSOP
Policy and the 72-75 ICSOP Policy are collectively referred to as
the "ICSOP Policies."

d)   The County paid all premiums on the ICSOP Policies as they
became due and payable.

e)   The County owns and currently operates the Mid-Valley Sanitary
Landfill (the "MVSL") located in the City of Rialto.

f)   The MVSL is currently comprised of 5 units, denominated by the
County as Unit 1, Unit 2, Unit 3, Unit 4 and Unit 5, respectively.

g)   The land underlying Unit 1 of the MVSL was acquired by the
County from Virg & Co. via a grant deed dated January 7, 1958.

h)   Unit 1 of the MVSL began landfilling operations in or around
1958.

i)   The land underlying Unit 2 of the MVSL was acquired by the
County from Fred M. Schulz and Walter M. Pointon, as Trustees
of the Testamentary Trust Estate of Edward Frederick Schulz, in
a series of three separate deeds dated August 9, 1971, August 28,
1972, and June 15, 1973, respectively.

j)   On October 9, 1998, the California Regional Water Quality
Control Board for the Santa Ana Region (the "RWQCB") issued
cleanup and abatement order 98-96 to the County (the "Order").

k) The County incurred, and continues to incur, costs and expenses in complying with its obligations arising out of and related to the Order.

l) By letter dated August 27, 2014 the County forwarded documents to ICSOP concerning costs and expenses the County incurred in response to the Order.  The letter requested that ICSOP acknowledge its responsibility to defend and indemnify the County concerning the Order within 30 days.

m) By letter dated September 3, 2014, ICSOP acknowledged receipt of the documents accompanying the August 27, 2014 letter

n) On April 20, 2017, ICSOP issued a $9 million check to the County in partial payment of amounts sought by the County in connection with the Order, and stated that the payment was made subject to a reservation of rights, including the right to seek complete recoupment of the payment.

**6.   STIPULATED FACTS SUBJECT TO OBJECTION**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

**7.   CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL**

Counsel for the parties agreed at their in-person pretrial conference meeting that, since this is a declaratory judgment action, the County shall present its claims first, even though ICSOP filed the initial Complaint.

**The County's Counterclaims and Affirmative Defenses:**

a) The County plans to pursue the following claims against ICSOP and affirmative defenses to ICSOP's claims:

i. <u>Counterclaim 1</u>: Breach of Contract – Failure to Pay "Ultimate Net Loss"

ii. <u>Counterclaim 2</u>: Declaratory Relief – ICSOP is Obligated

under the ICSOP Policies to Pay for Loss Which the County
Will Incur as a Result of the Contamination

    iii.   <u>Affirmative Defense 2</u>: Estoppel

    iv.   <u>Affirmative Defense 3</u>: Waiver

    v.   <u>Affirmative Defense 4</u>: Laches

    vi.   <u>Affirmative Defense 5</u>: Unclean Hands

    vii.   <u>Affirmative Defense 6</u>: Breach of Contract

    viii.   <u>Affirmative Defense 7</u>: Ratification

    ix.   <u>Affirmative Defense 8</u>: Unjust Enrichment

    x.   <u>Affirmative Defense 9</u>: Custom and Usage

    xi.   <u>Affirmative Defense 10</u>: Breach of Fiduciary Duty

    xii.   <u>Affirmative Defense 11</u>: Constructive/Actual Notice

    xiii.   <u>Affirmative Defense 12</u>: No Prejudice

b) The elements required to establish the County's claims and
affirmative defenses are:

    i.   <u>Counterclaim 1</u>: To establish breach of an insurance contract
by ICSOP, the County must prove only: (1) the County
suffered a loss, all or part of which was covered under the
ICSOP Policies; (2) ICSOP was informed of the loss; and (3)
the amount of the covered loss that ICSOP failed to pay.

       *See* California Civil Jury Instructions § 2300 (2017);
*Isaacson v. California Insurance Guarantee Assn.*, 44 Cal. 3d
775, 791 (Cal. 1988); Croskey et al., California Practice
Guide: Insurance Litigation (The Rutter Group 2017) ¶¶
15:52, 15:924.

ICSOP contends element (2) requires notice of loss as
required by the policy.  CACI 2320.

The County responds that this jury instruction indicates that

notice could be given by the insured, or the insurer could receive notice by some other means, either within the time specified in the policy or within a reasonable time.

ii.   <u>Counterclaim 2</u>: To establish the right to a judicial declaration against ICSOP as to its future obligations under the Policies, the County must prove only that: (1) the County suffered or will suffer a loss, all or part of which was or is covered under the ICSOP Policies; and (2) ICSOP was informed of the loss.

*See* California Civil Jury Instructions § 2300 (2017); *Isaacson v. California Insurance Guarantee Assn.*, 44 Cal. 3d 775, 791, 750 P.2d 297, 308 (Cal. 1988); Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group 2017) ¶¶ 15:52, 15:924.

ICSOP contends element (2) requires notice of loss as required by the policy.  CACI 2320.

The County responds that this jury instruction indicates that notice could be given by the insured or the insurer could receive notice by some other means, either within the time specified in the policy or within a reasonable time.

iii.   <u>Affirmative Defense 2</u>: The elements of the defense of estoppel are: (1) ICSOP knew the facts; (2) ICSOP intended that its conduct be acted on or so acted that the County had a right to believe it was so intended; (3) the County was ignorant of the true facts; and (4) the County relied on ICSOP's conduct to its injury.

*See U.S. ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC EX, 2002 WL 35454612, at *11 (C.D. Cal. Aug. 5, 2002);*United States v. Georgia–Pacific Company*,

421 F.2d 92, 95 (9th Cir. 1970); *U.S. for Use of Youngstown Welding & Eng'g Co. v. Travelers Indem. Co.*, 802 F.2d 1164, 1168 (9th Cir. 1986).

iv.  Affirmative Defense 3: Under California Insurance Code sections 553 and 554, the insurer waives a late or defective-notice defense if it does not raise the defense specifically and promptly; there are no other elements.

Separately, the common-law elements of waiver are: (1) ICSOP knew of its alleged right to assert its claims; and (2) ICSOP intentionally relinquished that right, either expressly or through conduct inconsistent with an intent to enforce that right.

Cal. Ins. Code §§ 553, 554.  *See also Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP SSX, 2014 WL 5419512, at *3 (C.D. Cal. Oct. 23, 2014).

ICSOP contends the elements of any waiver defense are: (1) ICSOP knew of alleged coverage defenses and (2) ICSOP freely and knowingly gave up its right to assert coverage defenses.  See CACI 336; *Oakland-Alameda County Coliseum, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.* (N.D. Cal. 2007) 480 F.Supp.2d 1182, 1191; *Insua v. Scottsdale Ins. Co.* (2002) 104 Cal.App.4th 737, 742-743.

The County contends that the common-law waiver elements do not override the statute, and that California law as cited above allows waiver to be implied by conduct.

v.  Affirmative Defense 4: To prove a laches defense, the County must establish (1) a failure to raise an issue; (2) for a period of time that amounted to an unreasonable delay; and (3) the

delay resulted in prejudice to the County.

Enforcement of the waiver in California Insurance Code sections 553 and 554 requires only a showing that the insurer did not raise a late or defective-notice defense specifically and promptly.

*See In re Imperial Credit Indus., Inc.*, No. SA CV 07-777CAS, 2008 WL 4346785, at *9 (C.D. Cal. Sept. 18, 2008). For ICSOP's position, *see* Affirmative Defense 3 above.

vi.  <u>Affirmative Defense 5</u>: To establish unclean hands, the County must demonstrate (1) inequitable conduct by ICSOP; (2) that ICSOP's conduct directly related to the claim which it has asserted against the County; and (3) ICSOP's conduct injured the County.  Inequitable conduct occurs when ICSOP "has violated conscience, good faith or other equitable principles in its prior conduct," as well as when ICSOP "has dirtied its hands in acquiring the right presently asserted."

*See Demarest v. Quick Loan Funding, Inc.*, No. CV09-01687 MMM(SSX), 2009 WL 940377, at *7 (C.D. Cal. Apr. 6, 2009); *Survivor Productions LLC v. Fox Broadcasting Co.*, No. CV01-3234 LGB (SHX), 2001 WL 35829270, *3 (C.D. Cal. June 12, 2001); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

vii.  <u>Affirmative Defense 6</u>: To establish breach of an insurance contract by ICSOP, the County must prove: (1) the County suffered a loss, all or part of which was covered under the ICSOP Policies; (2) ICSOP was notified of the loss; and (3) the amount of the covered loss that ICSOP failed to pay.

*See* California Civil Jury Instructions § 2300 (2017);

1

2
        *Isaacson v. California Insurance Guarantee Assn.*, 44 Cal. 3d

3
        775, 791, 750 P.2d 297, 308 (Cal. 1988); Croskey et al.,

4
        California Practice Guide: Insurance Litigation (The Rutter

5
        Group 2017) ¶¶ 15:52, 15:924.

6
        ICSOP contends element (2) requires notice of loss as

7
        required by the policy.  CACI 2320.

8
        The County responds that this jury instruction indicates that

9
        notice could be given by the insured or the insurer could

10
        receive notice by some other means, either within the time

11
        specified in the policy or within a reasonable time.

12
    viii.    <u>Affirmative Defense 7</u>: To establish the defense of

13
        ratification, it must be shown that ICSOP (1) acted voluntarily

14
        and with knowledge of the facts; and (2) intended to ratify the

15
        agreement.

16
          *See Union Pac. R. Co. v. Zimmer*, 87 Cal. App. 2d 524,

17
        532 (1948); *Bourbeau v. Cognitive Code Corp.*, No. 15-

18
        55950, 2017 WL 1960420, at *2 (9th Cir. May 11, 2017).

19
    ICSOP contends the test for ratification is "whether the

20
    releasor with full knowledge of material facts entitling him to

21
    rescind has engaged in some unequivocal conduct giving rise to

22
    an inference that he intended his conduct to amount to a

23
    ratification."  *Union Pacific R. Co. v. Zimmer* (1948) 87

24
    Cal.App.2d 524, 532.

25

26
    ix.    <u>Affirmative Defense 8</u>: The elements of the defense of unjust

27
        enrichment are: (1) ICSOP's receipt of a benefit; and (2)

28
        ICSOP's unjust retention of the benefit at the expense of the

        County.

*See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

ICSOP contends element (1) requires the receipt of the benefit to be at another's expense.

The County contends ICSOP was unjustly enriched at the County's expense.

    x.    <u>Affirmative Defense 9:</u> The proponent of custom and usage evidence must demonstrate the common practice in the place where the contract is to be performed or the relationship is to be centered.

        *See Nat'l Am. Ins. Co. of California v. Certain Underwriters at Lloyd's London*, 93 F.3d 529 (9th Cir. 1996).

ICSOP contends this is not a recognized affirmative defense.

    xi.    <u>Affirmative Defense 10:</u> The elements of breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) its breach, which can be based upon either negligence or fraud; and (3) damage proximately caused by the breach.

        *See Siegal v. Gamble*, No. 13-CV-03570-RS, 2016 WL 1085787, at *8 (N.D. Cal. Mar. 21, 2016); *Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015).

ICSOP contends the breach cannot be based on negligence. *Salahutdin v. Valley of California, Inc.* 1994) 24 Cal.App.4th 555, 563.

The County contends that the case law, including *Salahutdin*, allows negligence to form the basis for this breach of duty.

    xii.    <u>Affirmative Defense 11:</u> To prove constructive notice, it must

be established that the condition existed long enough or was of such an obvious nature that it may be inferred that a reasonable inquiry by ICSOP would have ascertained its existence.  Actual notice is established by proving ICSOP's actual knowledge.

   *See* Cal. Civ. Code § 19; *Strongman v. Kern Cty.*, 255 Cal. App. 2d 308, 312-13 (1967); *Van Dorn v. City & Cty. of San Francisco*, 103 Cal. App. 2d 714, 717 (1951).

ICSOP contends actual notice requires proof that when the County had information from which the County could reasonably conclude that an occurrence covered under the ICSOP Policies involved injuries or damages which, in the event the County  should be held liable, was likely to involve the ICSOP Policies, the County sent notice to C.V. Starr and Co. as soon as practicable.  ICSOP Policy language.

The County contends that actual notice is not defined in the Policy, but to the extent that the Policy language is relevant, it speaks for itself and ICSOP has omitted the last phrase of Condition G, which provides "that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims." Constructive notice requires proof that ICSOP was provided with information sufficient to put ICSOP on notice that it had a contractual duty to conduct a further investigation to determine if the County was asserting a claim for coverage under the

ICSOP Policies for a claim that had not already been tendered and that if ICSOP had diligently conducted such further investigation it would have discovered that the County was asserting a new claim for coverage under the ICSOP Policies. *KPFF, Inc. v. California Union Ins. Co.* (1997) 56 Cal.App.4th 963, 973; *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 37.

The County contends that ICSOP's commentary is not a proper description of the limited notice that suffices to give an insurer constructive notice under California law. *Span, Inc. v. Associated Int'l Ins. Co.*, 227 Cal. App. 3d 463, 481–482 (1991), *reh'g denied and opinion modified* (Feb. 27, 1991) (finding the knowledge of a tort action against the insured and insolvency of the primary insurer amounted to constructive notice to the excess insurer); *Moe v. Transamerica Title Ins. Co.*, 21 Cal. App. 3d 289, 302 (1971) (citing Cal. Civ. Code § 19 and finding constructive notice even when the same insurer was considering a different policy for the same insured).

xiii.   <u>Affirmative Defense 12:</u>  To establish no notice-prejudice, ICSOP must demonstrate that there was a substantial likelihood that it could have either: (1) defeated the underlying claim against the County; or (2) settled the case for a smaller sum than that for which the County ultimately settled the claim.

*See* California Civil Jury Instructions § 2320 (2017); *Ins. Co. of State of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 524 (9th Cir. 1990).

ICSOP contends that to establish a lack of prejudice on the part of ICSOP, the County must demonstrate that there was no substantial likelihood, that, had timely notice been provided, ICSOP could have taken steps that would have reduced the County's liability.  See CACI 2320.

The County responds that ICSOP's statement reverses the burden of proof under California law.  "[I]t is settled that breach of a notice clause by an insured may not be asserted by an insurer unless the insurer was ***substantially prejudiced*** thereby; that prejudice is ***not presumed*** as a matter of law from such breach; and that the insurer has the burden of proving ***actual prejudice and not just a mere possibility of prejudice***."  *Moe v. Transamerica Title Co.*, 21 Cal. App. 3d 289, 302 (1971) (emphasis added).

c)  In brief, the key evidence the County relies on for each of the claims and affirmative defenses is:

i.    Generally, for all claims and affirmative defenses:

- The ICSOP Policies;
- Documents, percipient witness testimony, and expert testimony regarding the occurrences and losses covered by the ICSOP Policies (including but not limited to the testimony of Dr. Hromadka and County personnel);
- Documents, percipient witness testimony, and expert testimony regarding communications and negotiations between ICSOP and the County relating to the ICSOP Policies;
- The Order, including all amendments and communications

1

2    regarding the Order and its implementation;

3    • Documents, percipient witness testimony, and expert

4    testimony regarding communications between the County

5    and ICSOP relating to the County's obligations, including

6    those set forth in the Order;

7    • The August 27, 2014 letter and supporting materials from

8    the County to ICSOP documenting the costs and expenses

9    that the County incurred in connection with the

10    contamination at issue in the Order;

11    • Documents and testimony regarding ICSOP's undisputed

12    receipt of the Order from the County in 2008;

13    • Documents and testimony regarding AIG's (ICSOP's

14    parent company) awareness of the water purveyors'

15    complaints of volatile organic compound ("VOC")

16    contamination of their groundwater production wells in

17    1997, evidenced in AIG's communications to the County

18    on August 22, 1997 and September 11, 1997;

19    • Documents and testimony regarding the other

20    documentation the County provided ICSOP of costs and

21    expenses incurred by the County to investigate, remediate

22    and protect the health and safety of the residents and

23    citizens of the County of San Bernardino against the

24    contamination at issue in the Order (including but not

25    limited to the testimony of Mr. Kinrich and Mr. Edwards];

26    • Documents and testimony regarding the substantial costs

27    and expenses, exceeding $29 million, the County incurred,

28    and continues to incur, in complying with its obligations,

including those set forth in the Order;

- Documents and testimony regarding ICSOP's refusal to acknowledge coverage of the County's claims relating to its costs and expenses incurred by the County to investigate, remediate and protect the health and safety of the residents and citizens of the County of San Bernardino against the contamination at issue in the Order; and

- Documents, testimony, and expert opinion regarding ICSOP's responses to the County's claim for coverage (including but not limited to the testimony of Mr. Lathrop).

ii. <u>Counterclaim 1</u>: (1) ICSOP has breached its contractual obligations under the Policies, including ICSOP's duty to indemnify the County against "Ultimate Net Loss" that the County has incurred as a result of the contamination at issue in the Order, including, without limitation, "expenses for…lawyers….and investigators and other persons, and for litigation, settlement, adjustment and investigation of" the contamination at issue in the Order, as reasonably necessary to avoid and/or minimize the County's potential liability in connection with such Order, and to protect the health and safety of the citizens of the County of San Bernardino.

ICSOP has delayed, refused and failed to pay any such "Ultimate Net Loss" incurred by the County as a result of the contamination at issue in the Order; while ICSOP has provided an illusory $9 million check, it has stated that it will attempt to recoup that money if it prevails at trial. Accordingly, ICSOP has effectively denied coverage – and sued its insured so that the County has had to litigate its right to coverage under the Policies.

- 15 -

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

ICSOP has never provided the County with its coverage determination, and has instead forced the County into expensive litigation.  These Policies cover pollution liability of the County.  They have no aggregate limits for the number of occurrences they cover.  The current dispute essentially centers around two things: (1) the number of occurrences (the County contends there are about 10 and ICSOP says there is only one); and (2) ICSOP's late notice defense.  The County contends that notice was not late, and that even if it was late, ICSOP waived it by its conduct under California law.  Even if waiver is not found, ICSOP must prove it was substantially prejudiced because of the late notice, and ICSOP has not set forth any such evidence.

As a direct and proximate result of ICSOP's breach of contract, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement.

(2) ICSOP received notice in 1997 of claims against the County for property damage resulting from the same VOC contamination at issue in the Order, it received the Order in 2008, and it received what it admits was notice of the County's losses in 2014 yet failed to specifically raise a late or defective-notice defense for at least 442 days (resulting in a statutory waiver of any such defense).  ICSOP also has not shown substantial prejudice – ICSOP cannot show it would have reduced the liability, and it has not accepted coverage. Further, the Policies give the County the right to control its defense, and there is no voluntary payments clause.

(3) As a direct and proximate result of ICSOP's breach of contract, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement.  To date, this exceeds $29 million.

iii.   Counterclaim 2: (1) ICSOP has breached its contractual obligations under the Policies, including ICSOP's duty to indemnify the County against "Ultimate Net Loss" that the County has incurred, and continues to incur, as a result of the contamination at issue in the Order, including, without limitation, "expenses for…lawyers….and investigators and other persons, and for litigation, settlement, adjustment and investigation of" the contamination at issue in the Order, as reasonably necessary to avoid and/or minimize the County's potential liability in connection with the contamination at issue in the Order, and to protect the health and safety of the citizens of the County of San Bernardino.

ICSOP has delayed, refused and failed to pay any such "Ultimate Net Loss" incurred by the County as a result of the contamination at issue in the Order; while ICSOP has provided an illusory $9 million check, it has stated that it will attempt to recoup that money if it prevails at trial. Accordingly, ICSOP has effectively denied coverage – and sued its insured so that the County has had to litigate its right to coverage under the Policies.

ICSOP has never provided the County with its coverage determination, and has instead forced the County into expensive litigation.  These Policies cover pollution liability of the County.  They have no aggregate limits for the number

of occurrences they cover.  The current dispute essentially centers around two things: (1) the number of occurrences (the County contends there are about 10 and ICSOP says there is only one); and (2) ICSOP's late notice defense.  The County contends that notice was not late, and that even if it was late, ICSOP waived it by its conduct under California law.  Even if waiver is not found, ICSOP must prove it was substantially prejudiced because of the late notice, and ICSOP has not set forth any such evidence.

As a direct and proximate result of ICSOP's breach of contract, the County has been, and continues to be, required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement.

(2) ICSOP received notice in 1997 of the County's losses, it received the Order in 2008, and it received what it admits was notice of the County's losses in 2014 yet failed to specifically raise a late or defective-notice defense for at least 442 days (resulting in a statutory waiver of any such defense). ICSOP also has not shown substantial prejudice – ICSOP cannot show it would have reduced the liability, and it has not accepted coverage.  Further, the Policies give the County the right to control its defense, and there is no voluntary payments clause.

(3) ICSOP should be ordered to pay the County's future costs pursuant to its Policies.

iv.   <u>Affirmative Defense 2</u>: (1) ICSOP's misconduct in failing to properly respond to all of the County's notices to it estops ICSOP from claiming any defects in, lack of or late notice or

any violation of any Policy provision.  ICSOP received notice in 1997 of the County's losses, it received the Order in 2008, and it received what it admits was notice of the County's losses in 2014 yet failed to specifically raise a late or defective-notice defense for at least 442 days (resulting in a statutory waiver of any such defense).  ICSOP also has not shown substantial prejudice – ICSOP cannot show it would have reduced the liability, and it has not accepted coverage. Further, the Policies give the County the right to control its defense, and there is no voluntary payments clause.

(2) ICSOP failed to provide the County with its coverage determination, failed to pay anything (until recently, and even now threatens recoupment), failed to conduct a proper investigation, and failed to inform the County of the progress of the claim.  These activities and more mean that ICSOP cannot rely on Policy provisions inserted for its benefit to deny coverage.

(3) ICSOP had notice in 1997 of the County's losses, it received the Order in 2008, and it received what it admits was notice of the County's losses in 2014 yet failed to specifically raise a late or defective-notice defense for at least 442 days (resulting in a statutory waiver of any such defense).  ICSOP also has not shown substantial prejudice.

(4) As a direct and proximate result of ICSOP's breach of contract, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement.  To date, this exceeds $29 million.

v.   Affirmative Defense 3: The County claims each and all of the

purported causes of action asserted in the Complaint are barred by waiver – namely, ICSOP's misconduct in failing to respond to notices by the County and its failure to process the County's claim in a reasonable manner mean that it cannot enforce exclusions or conditions in the Policies to limit coverage, including but not limited to the notice provision.  In particular, California Insurance Code sections 553 and 554 provide that an insurer waives all late or defective-notice defenses if it does not specifically raise those defenses promptly in writing, and here, ICSOP waited anywhere from 19 years to 442 days – nothing in this time period is prompt under California law.  Further, all notice defenses are waived by ICSOP's effective denial of coverage.

    vi.    <u>Affirmative Defense 4</u>: (1) The County claims each and all of the purported causes of action asserted in the Complaint are barred by laches.  Specifically, ICSOP's failed to respond to notices in 1997 and 2008, and it responded deficiently in 2014 by failing to specifically raise a late or defective-notice defense until late 2015.

    (2) ICSOP waited anywhere from 19 years to 442 days to process the County's claim.  Anything in this time period constitutes an unreasonable delay by ICSOP under California law.

    (3) As a direct and proximate result of ICSOP's unreasonable delay, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement.  To date, this exceeds $29 million.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

vii.    <u>Affirmative Defense 5</u>: (1) The County claims each and all of
the purported causes of action asserted in the Complaint are
barred by the doctrine of unclean hands.  Specifically,
ICSOP's failure to respond to notices in 1997 and 2008 and
its deficient response in 2014 – including its failure to
specifically raise a late or defective-notice defense until late
2015 – result in ICSOP being unable to enforce conditions
and exclusions in the Policies.  The failure to provide the
County with its coverage determination, the failure to pay
anything (until recently, and even then to threaten
recoupment), the failure to conduct a proper investigation and
to inform the insured of the results – all these activities and
more mean that ICSOP cannot rely on Policy provisions
inserted for its benefit to deny coverage.

(2) ICSOP failed to provide the County with its coverage
determination, failed to pay anything (until recently, and even
then threatens recoupment), failed to conduct a proper
investigation, and failed to inform the County of the results.

(3) As a direct and proximate result of ICSOP's
inequitable conduct, the County has been required to incur
and pay tens of millions of dollars to respond to property
damage claims without reimbursement.  To date, this exceeds
$29 million.

viii.   <u>Affirmative Defense 6</u>: (1) ICSOP has breached its
contractual obligations under the Policies, including ICSOP's
duty to indemnify the County against "Ultimate Net Loss"
that the County has incurred as a result of the contamination
at issue in the Order, including, without limitation, "expenses

for…lawyers….and investigators and other persons, and for litigation, settlement, adjustment and investigation of" the contamination at issue in the Order, as reasonably necessary to avoid and/or minimize the County's potential liability in connection with such Order, and to protect the health and safety of the citizens of the County of San Bernardino.

ICSOP has delayed, refused and failed to pay any such "Ultimate Net Loss" incurred by the County as a result of the contamination at issue in the Order; while ICSOP has provided an illusory $9 million check, it has stated that it will attempt to recoup that money if it prevails at trial. Accordingly, ICSOP has effectively denied coverage – and sued its insured so that the County has had to litigate its right to coverage under the Policies.

ICSOP has never provided the County with its coverage determination, and has instead forced the County into expensive litigation.  As a direct and proximate result of ICSOP's breach of contract, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement.

(2) ICSOP received notice in 1997 of the County's losses, it received the Order in 2008, and it received what it admits was notice of the County's losses in 2014 yet failed to specifically raise a late or defective-notice defense for at least 442 days (resulting in a statutory waiver of any such defense).

(3) As a direct and proximate result of ICSOP's breach of contract, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

without reimbursement.  To date, this exceeds $29 million.

ix.   <u>Affirmative Defense 7</u>: (1) The County claims each and all of the purported causes of action asserted in the Complaint are barred by ICSOP's ratification of the actions undertaken. ICSOP's conduct in failing to respond and then responding without a late or defective-notice defense ratified the County's conduct in not only reporting the claim, but undertaking its remediation required by the Order.  ICSOP received notice in 1997 of the County's losses, it received the Order in 2008, and it received what it admits was notice of the County's losses in 2014.

ICSOP also has not shown substantial prejudice – ICSOP cannot show it would have reduced the liability, and it has not accepted coverage.  Further, the Policies give the County the right to control its defense, and there is no voluntary payments clause.

(2) Despite its prolonged knowledge of the County's claim for losses, ICSOP failed to specifically raise a late or defective-notice defense for at least 442 days.

x.   <u>Affirmative Defense 8</u>: (1) The County claims each and all of the purported causes of action asserted in the Complaint are barred because ICSOP would be unjustly enriched if it prevailed on its Complaint or any of the causes of action purportedly set forth therein.  The County paid premiums for the Policies and is entitled to full coverage pursuant to the Policies' terms.

(2) Allowing ICSOP to retain not only the premium but its other funds when it should be paying for coverage is a benefit

to which ICSOP is not entitled.

    xi.    <u>Affirmative Defense 9</u>: The custom and practice in the insurance industry, and the custom and usage of insurance policies in California, require an insurer to respond when it receives a complaint from its insured.  ICSOP violated the custom and practice in the insurance industry, and the custom and usage of insurance policies in California, when it took no action after receiving notice in 1997 of water purveyors' claims against the County for property damage to their drinking water production wells resulting from the same contamination at issue in the Order, undisputedly receiving a copy of the Order from the County in 2008, and again when it stuck its head in the sand after receiving the County's August 27, 2014 letter instead of promptly providing the County with its coverage determination.

    xii.    <u>Affirmative Defense 10</u>: (1) The County claims each and all of the purported causes of action asserted in the Complaint are barred by ICSOP's breach of duties owed to the County.  In California, an insurer has a special relationship with its insured, and owes the insured a duty to treat its insured's interests as at least equal to its own.

    (2) ICSOP breached that duty by failing to respond to the County's notice, mishandling its claim, and unreasonably denying full coverage without a full and fair investigation or proper interpretation of the Policies.  Indeed, instead of providing coverage, ICSOP commenced this suit, greatly prejudicing its insured in the underlying proceedings.  And since then, ICSOP's failure to provide the County with its

62880

coverage determination, the failure to pay anything (until recently, and even then to threaten recoupment), the failure to conduct a proper investigation, and the failure to inform the insured of the progress of the claim, have all fallen well short of the standards of conduct required for insurers in California.

(3) As a direct and proximate result of ICSOP's breach of duties owed to the County, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement. To date, this exceeds $29 million.

xiii.    <u>Affirmative Defense 11</u>: The County gave notice of the claim in 1997, 2008 and 2014.  ICSOP disputes only the notice that the County gave in 1997; it admits the other two instances. ICSOP was also participating in activities at the Landfill and the Rialto-Colton basin for years, so it had actual knowledge of the contamination at issue in the Order and leading to this suit.  Still, ICSOP failed to specifically raise a late or defective-notice defense until late 2015.

xiv.    <u>Affirmative Defense 12</u>: (1) Any delayed notice to ICSOP of the contamination at issue in the Order did not result in any prejudice to ICSOP.  The burden of proof is on ICSOP to show not only untimely notice, but substantial prejudice therefrom, and ICSOP cannot.  The County did what it was ordered to do, and ICSOP has only speculation that its earlier involvement would have made any difference to the County's obligations.  Indeed, ICSOP appears to resort to an argument that the PCE remediation standard set by the RWQCB in the Order at the drinking water production wells – which mirrors

the public health protection standard set by the EPA's MCLG of "non-detect" – is too onerous and should not have been imposed by the RWQCB (irrespective of its undisputed statutory and regulatory authority to do so).  There was simply no prejudice to ICSOP here, as the County's remediation obligations are set by law, not the speculative musings of its insurer.

Further, ICSOP has not shown substantial prejudice – ICSOP cannot show it would have eliminated the liability, and it has not accepted coverage. In addition, the Policies give the County the right to control its defense, and there is no voluntary payments clause.

(2) Any delayed notice to ICSOP of the contamination at issue in the Order did not result in any prejudice to ICSOP. The burden of proof is on ICSOP to show not only untimely notice, but substantial prejudice therefrom, and ICSOP cannot.  The County did what it was ordered to do, and ICSOP has only speculation that its earlier involvement would have made any difference to the County's obligations.  There was simply no prejudice to ICSOP here, as the County's remediation obligations are set by law, not the speculative musings of its insurer.  Further, ICSOP has not shown substantial prejudice – ICSOP cannot show it would have reduced the liability, and it has not accepted coverage.  In addition, the Policies give the County the right to control its defense, and there is no voluntary payments clause

**ICSOP's Claims and Defenses:**

(a)    ICSOP plans to pursue the following claims against the County:

First Cause of Action - Declaratory Relief Regarding the Duty to Indemnify – The Limits of Liability of the ICSOP Policies Cannot be Stacked

The non-cumulation provisions in ICSOP Policy Nos. 426-0772, 429-0989 and 4272-1195 ("ICSOP Policies") preclude the County from stacking the limits of liability of the ICSOP Policies regardless of whether property damage takes place over more than one ICSOP Policy period.

Second Cause of Action - Declaratory Relief Regarding Duty to Indemnify – Breach of Condition Precedent as to Notice

The County breached Condition G, Notice of Occurrence, in the ICSOP Policies.

Third Cause of Action - Declaratory Relief Regarding Duty to Indemnify-Breach of Condition Precedent as to Liability Assumed in Settlement

The County breached Condition J, Loss Payable of the ICSOP Policies.

(b)     The elements required to establish ICSOP's claims are:

First Cause of Action - The Court has interpreted Condition C in the ICSOP Policies in ICSOP's favor and has ruled that the limits of liability of the ICSOP Policies may not be stacked in connection with payment for property damage arising out of a single occurrence.  (Docket No. 45.)

The County has moved for reconsideration and contends that California law does not allow Condition C to operate as ICSOP contends.

Second Cause of Action - (1) The County did not give ICSOP notice of its claim for coverage for CAO 98-96 as soon as practicable after the issuance of CAO 98-96 and in the manner required by the ICSOP Policies, and (2) ICSOP was prejudiced by the County's failure to give timely notice.  To establish prejudice, ICSOP must show a substantial likelihood that, with timely notice, it would have taken steps that could have reduced the County's liability.  See CACI 2320.

The County responds that ICSOP's first element is incomplete: ICSOP has omitted the last phrase of Condition G, which provides "that failure to give notice of any occurrence which at the time of its happening did not appear to involve this

policy but which, at a later date, would appear to give rise to claims hereunder, shall
not prejudice such claims."

Also, ICSOP misquotes the second element of CACI 2320, which requires
ICSOP to show that it would have taken steps that "*would have* substantially
reduced *or eliminated* the County's liability."  (Emphasis added).

ICSOP responds that its elements expressly incorporate the notice
requirements in the ICSOP Policy and the County contends the ICSOP Policy was
implicated once it spent $25,000, which happened before CAO 98-96 was issued.

Third Cause of Action - (1) The County assumed an obligation, incurred
expenses and made payments with regard to CAO 98-96, (2) the County did not
make a claim for reimbursement from ICSOP within 12 months of making payment
in response to CAO 98-96, (3) the County's liability has not been rendered certain
by final judgment, and (4) the County's liability has not been rendered certain by a
written agreement between the County, the RWQCB and ICSOP.  See CACI 2322.
Condition J, Loss Payable, ICSOP Policies.

The County contends that (A) ICSOP's elements are inconsistent, and show
that ICSOP cannot demonstrate Condition J is satisfied; and (B) CACI 2322 is
inapplicable because there is no voluntary payments clause in the Policies, and the
CACI Directions for Use indicate such a clause must be present.

ICSOP responds that the ICSOP Policy expressly states that liability under the
policy shall not attach unless the conditions in Condition J are satisfied, which
requires either submission of a claim for reimbursement within 12 months of making
payment or that the County's liability has been rendered certain by one of the means
described in the policy.

(c)     The key evidence ICSOP relies on for each of the claims is:

First Cause of Action

Not applicable for the reasons discussed above.

Second Cause of Action

(1) The County first informed the RWQCB of a tentative release of volatile organic compounds ("VOC") at the County's Mid Valley Sanitary Landfill ("MVSL") on October 3, 1994.  Beginning no later than 1995, the County began working with the RWQCB and other authorities to address VOC contamination issues arising from the MVSL.  In 1997 and 1998, the County began negotiating settlement agreements with San Gabriel Valley Water Company, Cucamonga Valley Water District, Fontana Union Water Company and Fontana Water Resources ("Water Companies") in response to the Water Companies' concerns regarding potential contamination emanating from the MVSL and the County's plans to expand the capacity of the MVSL.  CAO 98-96 was entered on October 9, 1998.  In November 1998, the County entered into the first two settlement agreements with the Water Companies, committing to funding treatment systems.  The County did not provide notice to ICSOP of CAO 98-96 and its settlements with the Water Companies until August 14, 2014.  The County never provided notice to C.V. Starr and Co. as required by the ICSOP Policies.

(2) From 1995 through August 2014, the County alleges it incurred approximately $26.2 million responding to CAO 98-96, which includes the amounts incurred to construct and operate the treatment systems mentioned above, amounts incurred to pay for replacement water and additional amounts incurred in connection with the County's various agreements, including its agreement with the City of Rialto.

ICSOP was deprived of the opportunity to obtain information contemporaneously with the County's negotiation of the settlement agreements and CAO 98-96.  ICSOP was deprived of the opportunity to provide the County with its input regarding the proposed settlement agreements and CAO 98-96, both of which impose obligations on the County that go beyond obligations required by federal and state regulatory authorities in connection with remediation of VOC's emanating from the MVSL.  ICSOP was deprived of the opportunity to conduct an

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

investigation into the alleged claims contemporaneously with the assertion of the alleged claims, thereby prejudicing ICSOP's ability to fully investigate and evaluate coverage under the ICSOP Policies.  ICSOP's ability to explain what actions would have been taken had timely notice been provided also has been prejudiced due to the failure to provide timely notice in the first instance.

Third Cause of Action

(1) The County began making payments it attributes to its liability arising out of CAO 98-96 in 1995.  The County continued making such payments through at least August 27, 2014.

(2) The County did not make a claim for loss to ICSOP until August 27, 2014.

(3) No final judgment has been entered against the County with respect to CAO 98-96.

(4) ICSOP is not a party to the settlement agreements between the County and the Water Companies.  CAO 98-96 was entered into without notice to ICSOP and ICSOP is not a party thereto.

(a)      ICSOP plans to assert the following affirmative defenses to the County's counterclaim.

Second Affirmative Defense – The County's claims are barred by the doctrines of laches, unclean hands, waiver and/or equitable estoppel.

Fourth Affirmative Defense – The County's claims are barred, in whole or in part, by the terms, definitions, exclusions, conditions and other limitations in the ICSOP Policies.

Fifth Affirmative Defense – The County's claims are barred to the extent the County failed to comply with, or perform the obligations required by the ICSOP Policies.

Sixth Affirmative Defense – The County's claims are barred to the extent that Notice of the Order was not provided in the manner prescribed by the ICSOP

1

2   Policies and/or as required by law.

3       Seventh Affirmative Defense – The County's claims are barred to the extent

4   the County failed to assist and/or cooperate with ICSOP as required by the ICSOP

5   Policies or as implied by law.

6       Eighth Affirmative Defense – The County's claims are barred to the extent

7   ICSOP may be entitled to contribution, setoff, indemnification, apportionment, or

8   other relief from the County and/or any other insurer.

9       Ninth Affirmative Defense – The County's claims are barred to the extent the

10  County failed to mitigate, minimize or avoid any damages it allegedly sustained.

11      Tenth Affirmative Defense – The County's claims are barred to the extent that

12  unreasonable and/or unnecessary costs were expended by or on behalf of the County

13  in responding to the order.

14      Eleventh Affirmative Defense – The County's claims are barred to the extent

15  that the County voluntarily paid, assumed, and/or incurred expenses to defend or

16  settle the underlying claims without ICSOP's consent.

17      Fourteenth Affirmative Defense – The County's claims are barred by the

18  applicable statutes of limitation.

19      (b)    The elements required to establish ICSOP's affirmative defenses are:

20      Second Affirmative Defense – The elements of the doctrine of laches are an

21  unreasonable delay by plaintiff in asserting the claim plus either acquiescence in the

22  act about which plaintiff complains or prejudice to the defendant resulting from the

23  delay.  *Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359.

24  The County contends that, to prove a laches defense, ICSOP must establish (1) a

25  failure to raise an issue; (2) for a period of time that amounted to an unreasonable

26  delay; and (3) the delay resulted in prejudice to the ICSOP.  *See In re Imperial

27  Credit Indus., Inc.*, No. SA CV 07-777CAS, 2008 WL 4346785, at *9 (C.D. Cal.

28  Sept. 18, 2008).  These requirements are the same as those cited by the County

above in its Affirmative Defense 4.

The elements of the doctrine of unclean hands are conduct relative to the matter in which the plaintiff seeks relief that violates conscience, good faith or other equitable standards of conduct. *Aguawo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110.

The County contends that to establish unclean hands, ICSOP must demonstrate (1) inequitable conduct by the County; (2) that the County's conduct directly related to the claim which it has asserted against ICSOP; and (3) the County's conduct injured the ICSOP. Inequitable conduct occurs when the County "has violated conscience, good faith or other equitable principles in its prior conduct," as well as when the County "has dirtied its hands in acquiring the right presently asserted." *See Demarest v. Quick Loan Funding, Inc.*, No. CV09-01687 MMM(SSX), 2009 WL 940377, at *7 (C.D. Cal. Apr. 6, 2009); *Survivor Productions LLC v. Fox Broadcasting Co.*, No. CV01-3234 LGB (SHX), 2001 WL 35829270, *3 (C.D. Cal. June 12, 2001); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). These requirements are the same as those cited by the County above in its Affirmative Defense 5.

The elements of waiver are: (1) the County knew ICSOP was required to assert the defense of late notice in a timely fashion, and (2) the County freely and knowingly gave up its right to have ICSOP perform this obligation. See CACI 336.

The County contends, that the common-law elements of waiver are: (1) ICSOP knew of its alleged right to assert its claims; and (2) ICSOP intentionally relinquished that right, either expressly or through conduct inconsistent with an intent to enforce that right. *See Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP SSX, 2014 WL 5419512, at *3 (C.D. Cal. Oct. 23, 2014).

The elements of equitable estoppel are: (1) the party to be estopped knows the facts; (2) the party intends that his or her conduct will be acted on; (3) the party asserting estoppel is ignorant of the true facts; and (4) the party asserting estoppel detrimentally relies on the other party's conduct. *Salgado-Diaz v. Gonzales* (9th Cir.

2005) 395 F.3d 1157, 1166.

The County responds that it laid out the elements of estoppel in its portion, and ICSOP did not object to them. The County believes that the parties should be able to reach an agreement as to these elements. *See U.S. ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC EX, 2002 WL 35454612, at *11 (C.D. Cal. Aug. 5, 2002); *United States v. Georgia–Pacific Company*, 421 F.2d 92, 95 (9th Cir. 1970); *U.S. for Use of Youngstown Welding & Eng'g Co. v. Travelers Indem. Co.*, 802 F.2d 1164, 1168 (9th Cir. 1986).

ICSOP responds that there is no substantive distinction between the parties' descriptions of the elements of estoppel.

Fourth Affirmative Defense – An occurrence means "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in… property damage…during the policy period. All such exposure to substantially the same general conditions at or emanating from one premises location will be deemed one occurrence." Property damage is defined as "loss of or direct damage to or destruction of tangible property (other than property of the Named Assured)." ICSOP Policy language.

The County contends that the Policy must be read as a whole, which ICSOP does not do, including other uses of the word "occurrence," "premises," and "loss"/ "such loss"/"such losses."

ICSOP responds that the definition of occurrence is unambiguous.

Fifth Affirmative Defense –  Condition G – (1) The County did not give ICSOP notice of its claim for coverage for CAO 98-96 as soon as practicable after the issuance of CAO 98-96 and in the manner required by the ICSOP Policies, and (2) ICSOP was prejudiced by the County's failure to give timely notice. To establish prejudice, ICSOP must show a substantial likelihood that, with timely notice, it would have taken steps that could have reduced the County's liability. See CACI 2320.

1

2       The County responds that ICSOP's first element is incomplete: ICSOP has

3  omitted the last phrase of Condition G, which provides "that failure to give notice of

4  any occurrence which at the time of its happening did not appear to involve this

5  policy but which, at a later date, would appear to give rise to claims hereunder, shall

6  not prejudice such claims."

7       Also, ICSOP misquotes the second element of CACI 2320, which requires

8  ICSOP to show that it would have taken steps that "***would have*** substantially

9  reduced ***or eliminated*** the County's liability."  (Emphasis added).

10      See discussion of ICSOP's second cause of action above.

11      Condition J – (1) The County assumed an obligation, incurred expenses and

12  made payments with regard to CAO 98-96, (2) the County did not make a claim for

13  reimbursement from ICSOP within 12 months of making payment in response to

14  CAO 98-96, (3) the County's liability has not been rendered certain by final

15  judgment, and (4) the County's liability has not been rendered certain by a written

16  agreement between the County, the RWQCB and ICSOP.  Condition J, Loss

17  Payable, ICSOP Policies.

18      The County contends that (A) ICSOP's elements are inconsistent, and show

19  that ICSOP cannot demonstrate Condition J is satisfied; and (B) CACI 2322 is

20  inapplicable because there is no voluntary payments clause in the Policies, and the

21  CACI Directions for Use indicate such a clause must be present.

22      See discussion of ICSOP's third cause of action above.

23      Sixth Affirmative Defense – Condition G – (1) The County did not give

24  ICSOP notice of its claim for coverage for CAO 98-96 as soon as practicable after

25  the issuance of CAO 98-96 and in the manner required by the ICSOP Policies, and

26  (2) ICSOP was prejudiced by the County's failure to give timely notice.  To

27  establish prejudice, ICSOP must show a substantial likelihood that, with timely

28  notice, it would have taken steps that could have reduced the County's liability.  See CACI 2320.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

The County responds that ICSOP's first element is incomplete: ICSOP has omitted the last phrase of Condition G, which provides "that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims."

Also, ICSOP misquotes the second element of CACI 2320, which requires ICSOP to show that it would have taken steps that "**would have** substantially reduced **or eliminated** the County's liability." (Emphasis added).

Condition J – (1) The County assumed an obligation, incurred expenses and made payments with regard to CAO 98-96, (2) the County did not make a claim for reimbursement from ICSOP within 12 months of making payment in response to CAO 98-96, (3) the County's liability has not been rendered certain by final judgment, and (4) the County's liability has not been rendered certain by a written agreement between the County, the RWQCB and ICSOP. Condition J, Loss Payable, ICSOP Policies.

The County contends that (A) ICSOP's elements are inconsistent, and show that ICSOP cannot demonstrate Condition J is satisfied; and (B) CACI 2322 is inapplicable because there is no voluntary payments clause in the Policies, and the CACI Directions for Use indicate such a clause must be present.

See discussion of ICSOP's second and third causes of action above.

Seventh Affirmative Defense – (1) The County failed to give ICSOP the opportunity to associate with the County in the defense of the claim; (2) ICSOP was unable to exercise reasonable efforts to associate in the defense of the claims because it was not provided with notice; and (3) ICSOP was prejudiced by the County's failure to give ICSOP the opportunity to associate in the defense of the claim. See CACI 2321 (as modified).

The County responds that ICSOP does not quote Condition G, Condition H, or CACI 2321 properly. The second element appears nowhere in CACI 2321, which

requires that ICSOP used reasonable efforts to obtain the County's cooperation, and does not mention notice; moreover, CACI 2321 copies CACI 2320, which requires ICSOP to show that it would have taken steps that "*would have* substantially reduced *or eliminated* the County's liability" to prove prejudice.  (Emphasis added).  Further, Condition H does not give ICSOP the right "to assume charge of the settlement or defense of any claim," but only "the opportunity" to associate with the County and any underlying insurers "in the defense and control of any claim."

ICSOP responds that this affirmative defense addresses Condition H, not Condition G.  The portion of CACI 2321 regarding ICSOP using reasonable efforts to obtain the County's cooperation obviously does not apply here as this defense is based on the fact that the County did not cooperate prior to August 2014.  ICSOP could not have made any effort to obtain the County's cooperation before that date because the County did not tender CAO 98-96 until August 2014.

Eighth Affirmative Defense – Damages mean the amount of money that will fairly and reasonably compensate the County for any injury caused by ICSOP.  See Ninth Circuit Manual of Model Civil Jury Instructions § 5.1.

Ninth Affirmative Defense – The County failed to use reasonable efforts to mitigate damages, and the amount by which damages would have been mitigated.

Tenth Affirmative Defense – The County's efforts to comply with CAO 98-96 must constitute reasonable and necessary efforts to avoid or at lease minimize liability and the expenses incurred by the County must be reasonable and necessary for that purpose.  *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 61.

Eleventh Affirmative Defense – (1) The County assumed an obligation, incurred expenses and made payments with regard to CAO 98-96, (2) the County did not make a claim for reimbursement from ICSOP within 12 months of making payment in response to CAO 98-96, (3) the County's liability has not been rendered certain by final judgment, and (4) the County's liability has not been rendered

certain by a written agreement between the County, the RWQCB and ICSOP. Condition J, Loss Payable, ICSOP Policies.

The County contends that (A) ICSOP's elements are inconsistent, and show that ICSOP cannot demonstrate Condition J is satisfied; and (B) CACI 2322 is inapplicable because there is no voluntary payments clause in the Policies, and the CACI Directions for Use indicate such a clause must be present.

See discussion of ICSOP's third cause of action above.

Fourteenth Affirmative Defense – The County did not file its suit within four years from the date the County alleges ICSOP breached the insurance contracts and the County incurred harm more than four years before the date of filing this suit. See CACI 338; California Code of Civil Procedure § 337(1).

(c)     The key evidence ICSOP relies on for each affirmative defense is:

Second Affirmative Defense

Laches – (1) The County first informed the RWQCB of a tentative release of VOCs at the MVSL on October 3, 1994.  Beginning no later than 1995, the County began working with the RWQCB and other authorities to address VOC contamination issues arising from the MVSL.  In 1997 and 1998, the County began negotiating settlement agreements with the Water Companies in response to the Water Companies' concerns regarding potential contamination emanating from the MVSL and the County's plans to expand the capacity of the MVSL.  CAO 98-96 was entered on October 9, 1998.  In November 1998, the County entered into the first two settlement agreements with the Water Companies, committing to funding treatment systems.  The County did not provide notice to ICSOP of CAO 98-96 and its settlements with the Water Companies until August 14, 2014.  The County never provided notice to C.V. Starr and Co. as required by the ICSOP Policies.

(2) From 1995 through August 2014, the County alleges it incurred approximately $26.2 million responding to CAO 98-96, which includes the amounts incurred to construct and operate the treatment systems mentioned above, amounts

incurred to pay for replacement water and additional amounts incurred in connection with the County's various agreements, including its agreement with the City of Rialto.

ICSOP was deprived of the opportunity to obtain information contemporaneously with the County's negotiation of the settlement agreements and CAO 98-96. ICSOP was deprived of the opportunity to provide the County with its input regarding the proposed settlement agreements and CAO 98-96, both of which impose obligations on the County that go beyond obligations required by federal and state regulatory authorities in connection with remediation of VOC's emanating from the MVSL. ICSOP was deprived of the opportunity to conduct an investigation into the alleged claims contemporaneously with the assertion of the alleged claims, thereby prejudicing ICSOP's ability to fully investigate and evaluate coverage under the ICSOP Policies. ICSOP's ability to explain what actions would have been taken had timely notice been provided also has been prejudiced due to the failure to provide timely notice in the first instance.

Unclean Hands – The County was aware of a potential claim regarding VOC contamination at the MVSL as early as 1994 and began working with the RWQCB and incurring costs it now seeks to recover from ICSOP in 1995. CAO 98-96 was issued in 1998. The County entered into settlement agreements with the water Companies in 1998 and 2000. The County did not ask ICSOP to provide coverage for CAO 98-96 until August 27, 2014, after allegedly incurring over $26.2 million, which it is asking ICSOP pay. After tendering the claim in August 2014, the County took another 15 months to provide ICSOP with information the County deemed relevant to its claim. The County now claims ICSOP waived its right to assert a late notice defense because ICSOP issued it detailed coverage position letter in November 2015.

Waiver – The County was aware of a potential claim regarding VOC contamination at the MVSL as early as 1994 and began working with the RWQCB

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

and incurring costs it now seeks to recover from ICSOP in 1995.  CAO 98-96 was issued in 1998.  The County entered into settlement agreements with the water Companies in 1998 and 2000.  The County did not ask ICSOP to provide coverage for CAO 98-96 until August 27, 2014, after allegedly incurring over $26.2 million, which is asked ICSOP pay.  After tendering the claim in August 2014, the County took another 15 months to provide ICSOP with information the County deemed relevant to its claim.  The County now claims ICSOP waived its right to assert a late notice defense because ICSOP issued it detailed coverage position letter in November 2015.

Estoppel – The County was aware of a potential claim regarding VOC contamination at the MVSL as early as 1994 and began working with the RWQCB and incurring costs it now seeks to recover from ICSOP in 1995.  CAO 98-96 was issued in 1998.  The County entered into settlement agreements with the water Companies in 1998 and 2000.  The County did not ask ICSOP to provide coverage for CAO 98-96 until August 27, 2014, after allegedly incurring over $26.2 million, which is asked ICSOP pay.  After tendering the claim in August 2014, the County took another 15 months to provide ICSOP with information the County deemed relevant to its claim.  The County now claims ICSOP waived its right to assert a late notice defense because ICSOP issued it detailed coverage position letter in November 2015.

Fourth Affirmative Defense

(1) ICSOP's expert witness, Adam Love, will explain that the County cannot demonstrate that the property damage for which it has been held liable with respect to CAO 98-96 took place between July 23, 1966 and July 23, 1975, and any effort to do so would be speculative.  (2) Mr. Love's testimony will also establish that the property damage for which the County has been held liable with respect to CAO 98-96 arose out of no more than a single occurrence as defined in the ICSOP Policies.

Fifth Affirmative Defense

(1) The County first informed the RWQCB of a tentative release of VOCs at the MVSL on October 3, 1994.  Beginning no later than 1995, the County began working with the RWQCB and other authorities to address VOC contamination issues arising from the MVSL.  In 1997 and 1998, the County began negotiating settlement agreements with the Water Companies in response to the Water Companies' concerns regarding potential contamination emanating from the MVSL and the County's plans to expand the capacity of the MVSL.  CAO 98-96 was entered on October 9, 1998.  In November 1998, the County entered into the first two settlement agreements with the Water Companies, committing to funding treatment systems.  The County did not provide notice to ICSOP of CAO 98-96 and its settlements with the Water Companies until August 14, 2014.  The County never provided notice to C.V. Starr and Co. as required by the ICSOP Policies.

(2) From 1995 through August 2014, the County alleges it incurred approximately $26.2 million responding to CAO 98-96, which includes the amounts incurred to construct and operate the treatment systems mentioned above, amounts incurred to pay for replacement water and additional amounts incurred in connection with the County's various agreements, including its agreement with the City of Rialto.

ICSOP was deprived of the opportunity to obtain information contemporaneously with the County's negotiation of the settlement agreements and CAO 98-96.  ICSOP was deprived of the opportunity to provide the County with its input regarding the proposed settlement agreements and CAO 98-96, both of which impose obligations on the County that go beyond obligations required by federal and state regulatory authorities in connection with remediation of VOC's emanating from the MVSL.  ICSOP was deprived of the opportunity to conduct an investigation into the alleged claims contemporaneously with the assertion of the alleged claims, thereby prejudicing ICSOP's ability to fully investigate and evaluate coverage under the ICSOP Policies.  ICSOP's ability to explain what actions would

have been taken had timely notice been provided also has been prejudiced due to the failure to provide timely notice in the first instance.

(1) The County began making payments it attributes to its liability arising out of CAO 98-96 in 1995.  The County continued making such payments through at least August 27, 2014.

(2) The County did not make a claim for loss to ICSOP until August 27, 2014.

(3) No final judgment has been entered against the County with respect to CAO 98-96.

(4) ICSOP is not a party to the settlement agreements between the County and the Water Companies.  CAO 98-96 was entered into without notice to ICSOP and ICSOP is not a party thereto.

Sixth Affirmative Defense

(1) The County first informed the RWQCB of a tentative release of VOCs at the MVSL on October 3, 1994.  Beginning no later than 1995, the County began working with the RWQCB and other authorities to address VOC contamination issues arising from the MVSL.  In 1997 and 1998, the County began negotiating settlement agreements with the Water Companies in response to the Water Companies' concerns regarding potential contamination emanating from the MVSL and the County's plans to expand the capacity of the MVSL.  CAO 98-96 was entered on October 9, 1998.  In November 1998, the County entered into the first two settlement agreements with the Water Companies, committing to funding treatment systems.  The County did not provide notice to ICSOP of CAO 98-96 and its settlements with the Water Companies until August 14, 2014.  The County never provided notice to C.V. Starr and Co. as required by the ICSOP Policies.

(2) From 1995 through August 2014, the County alleges it incurred approximately $26.2 million responding to CAO 98-96, which includes the amounts incurred to construct and operate the treatment systems mentioned above, amounts incurred to pay for replacement water and additional amounts incurred in connection

with the County's various agreements, including its agreement with the City of Rialto.

ICSOP was deprived of the opportunity to obtain information contemporaneously with the County's negotiation of the settlement agreements and CAO 98-96. ICSOP was deprived of the opportunity to provide the County with its input regarding the proposed settlement agreements and CAO 98-96, both of which impose obligations on the County that go beyond obligations required by federal and state regulatory authorities in connection with remediation of VOC's emanating from the MVSL. ICSOP was deprived of the opportunity to conduct an investigation into the alleged claims contemporaneously with the assertion of the alleged claims, thereby prejudicing ICSOP's ability to fully investigate and evaluate coverage under the ICSOP Policies. ICSOP's ability to explain what actions would have been taken had timely notice been provided also has been prejudiced due to the failure to provide timely notice in the first instance.

(1) The County began making payments it attributes to its liability arising out of CAO 98-96 in 1995. The County continued making such payments through at least August 27, 2014.

(2) The County did not make a claim for loss to ICSOP until August 27, 2014.

(3) No final judgment has been entered against the County with respect to CAO 98-96.

(4) ICSOP is not a party to the settlement agreements between the County and the Water Companies. CAO 98-96 was entered into without notice to ICSOP and ICSOP is not a party thereto.

Seventh Affirmative Defense

(1) The County first informed the RWQCB of a tentative release of VOCs at the MVSL on October 3, 1994. Beginning no later than 1995, the County began working with the RWQCB and other authorities to address VOC contamination issues arising from the MVSL. In 1997 and 1998, the County began negotiating

settlement agreements with the Water Companies in response to the Water
Companies' concerns regarding potential contamination emanating from the MVSL
and the County's plans to expand the capacity of the MVSL.  CAO 98-96 was
entered on October 9, 1998.  In November 1998, the County entered into the first
two settlement agreements with the Water Companies, committing to funding
treatment systems.  The County did not provide notice to ICSOP of CAO 98-96 and
its settlements with the Water Companies until August 14, 2014.  The County never
provided notice to C.V. Starr and Co. as required by the ICSOP Policies.

   (2) From 1995 through August 2014, the County alleges it incurred
approximately $26.2 million responding to CAO 98-96, which includes the amounts
incurred to construct and operate the treatment systems mentioned above, amounts
incurred to pay for replacement water and additional amounts incurred in connection
with the County's various agreements, including its agreement with the City of
Rialto.  During this period, ICSOP had no opportunity to work with the County to
minimize expense and liability.

   (3) ICSOP was deprived of the opportunity to obtain information
contemporaneously with the County's negotiation of the settlement agreements and
CAO 98-96.  ICSOP was deprived of the opportunity to provide the County with its
input regarding the proposed settlement agreements and CAO 98-96, both of which
impose obligations on the County that go beyond obligations required by federal and
state regulatory authorities in connection with remediation of VOC's emanating
from the MVSL.  ICSOP was deprived of the opportunity to conduct an
investigation into the alleged claims contemporaneously with the assertion of the
alleged claims, thereby prejudicing ICSOP's ability to fully investigate and evaluate
coverage under the ICSOP Policies.  ICSOP's ability to explain what actions would
have been taken had timely notice been provided also has been prejudiced due to the
failure to provide timely notice in the first instance.

   Eighth Affirmative Defense

ICSOP has paid the County $9 million as reimbursement for costs the County allegedly has incurred in response to CAO 98-96.

Ninth Affirmative Defense

(1) The settlement agreements the County entered with the Water Companies required the County to assure that water produced from the Water Companies' wells meets the lowest concentration achievable by use of best available treatment technology currently or as hereafter required by any state or federal agency with jurisdiction over drinking water quality for any groundwater extraction well operated by the Water Companies. This agreement requires the County to treat groundwater even after contaminant levels are below Maximum Contaminant Levels ("MCL") set by federal or state agencies. The settlement agreements with the Water Companies do not provide the County with any means or method by which to terminate obligations under the agreements.

(2) As a result of the County's agreements with the Water Companies, the costs the County will incur for operation and maintenance of the corrective action system will exceed by approximately $3.1 million what the County would have incurred had it agreed to treat water until contaminants of concern fall below the MCL.

Tenth Affirmative Defense

(1) The settlement agreements the County entered with the Water Companies required the County to assure that water produced from the Water Companies' wells meets the lowest concentration achievable by use of best available treatment technology currently or as hereafter required by any state or federal agency with jurisdiction over drinking water quality for any groundwater extraction well operated by the Water Companies. This agreement requires the County to treat groundwater even after contaminant levels are below Maximum Contaminant Levels ("MCL") set

by federal or state agencies.  The settlement agreements with the Water Companies do not provide the County with any means or method by which to terminate obligations under the agreements.

(2) As a result of the County's agreements with the Water Companies, the costs the County will incur for operation and maintenance of the corrective action system will exceed by approximately $3.1 million what the County would have incurred had it agreed to treat water until contaminants of concern fall below the MCL.

Eleventh Affirmative Defense

(1) The County began making payments it attributes to its liability arising out of CAO 98-96 in 1995.  The County continued making such payments through at least August 27, 2014.

(2) The County did not make a claim for loss to ICSOP until August 27, 2014.

(3) No final judgment has been entered against the County with respect to CAO 98-96.

(4) ICSOP is not a party to the settlement agreements between the County and the Water Companies.  CAO 98-96 was entered into without notice to ICSOP and ICSOP is not a party thereto.

Fourteenth Affirmative Defense

(1) The County alleges that it provided notice of the claims for which it now seeks coverage to ICSOP in 1997 through the submission of a pollution legal liability insurance policy application, that ICSOP should have investigated and advised the County of whether the claims were covered under the ICSOP Policies, that ICSOP should have paid the claim at that time and that ICSOP's failure to do so breached its obligations to the County.  The County alleges that it incurred over $26.2 million between 1995 and August 27, 2014.

(2) This action was filed on January 21, 2016 and the County filed its counterclaim on March 18, 2016, more than four years after the County alleges it provided notice to ICSOP of the claims and after the County began incurring costs in connection with the claims.

## 8.    ISSUES REMAINING TO BE TRIED

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried: (1) whether the property damage identified in the Order for which the County seeks coverage was caused by an occurrence or occurrences as that term is defined in the ICSOP Policies; (2) the number of occurrences that caused the property damage identified in the Order; (3) whether any or all of the property damage identified in the Order for which the County seeks coverage took place during the period of the ICSOP Policies; (4) whether ICSOP's refusal to provide coverage for the County's claim arising out of its obligations related to the Order constituted a breach of the ICSOP Policies; (5) whether the County's claims are barred by the County's alleged failure to comply with Conditions G or H of the ICSOP Policies, including whether ICSOP was actually and substantially prejudiced by the alleged failure to comply with Condition G or H (ICSOP does not agree with the actually and substantially prejudiced language added by the County); (6) whether the County's claims are barred by the County's alleged failure to comply with Condition J of the ICSOP Policies, including whether ICSOP was actually and substantially prejudiced by the alleged failure to comply with Condition J (ICSOP does not agree with the actually and substantially prejudiced language added by the County); (7) whether ICSOP's or the County's claims are barred by the doctrines of laches, unclean hands, waiver or estoppel; (8) whether ICSOP's claims are barred by the doctrines of ratification, unjust enrichment, or lack of prejudice; (9) whether ICSOP breached its duty owed to the County (ICSOP does not agree this is an issue to be tried because it does not know the duty to which the County refers); and (10) whether the County's claims

are barred by the applicable statutes of limitations.

### 9.    DISCOVERY

All discovery is complete, except for the deposition of ICSOP's alleged rebuttal expert James A. Robertson, which ICSOP cancelled because of his illness and is now scheduled for July 19, 2017.

### 10.    DISCLOSURES

All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

ICSOP objects to Exhibit Nos. 1-4, 8-11, 15, 35-36, 38, 44, 58-63, 84-86, 91, 102, 119-123, 125-127, 206-227, 245-247, 253-255, 258-265, 268, 270, 281-287, 289, 291-300, 302-305, 308-316. The objections and grounds therefor are:

| No. of Exhibit | Description | Objection |
|---|---|---|
| 1 | August 21, 1997 AIG Quote to SB County (COUNTY00051465-51468) | ICSOP objects FRE 401-403 Incomplete |
| 2 | August 21, 1997 Fax w/continuation of AIG Quote (COUNTY00051472-51475) | ICSOP objects FRE 401-403 |
| 3 | September 11, 1997 AIG Quote (COUNTY00051393-51397) | ICSOP objects FRE 401-403 |
| 4 | September 11, 1997 AIG Quote with Markings (COUNTY00051398-51402) | ICSOP objects FRE 401-403 Incomplete |

| 8 | August 22, 1997 Select Policy Form Fax AIG to Nitz (COUNTY00051476-51508) | ICSOP objects<br>FRE 401-403 |
|---|---|---|
| 9 | October 7, 1997 Fax enclosing Pollution Liability Insurance Application (COUNTY00051454-51458) | ICSOP objects<br>FRE 401-403 |
| 10 | September 24, 1997 Pollution Legal Liability Application (COUNTY00051459-51464) | ICSOP objects<br>FRE 401-403 |
| 11 | September 24, 1997 Attachment to Pollution Legal Liability Application (COUNTY00051403-51419) | ICSOP objects<br>FRE 401-403<br>Incomplete<br>FRE 901 |
| 15 | June 9, 1997 Norcal letter to San Gabriel Valley Water Company (COUNTY00051426) | ICSOP objects<br>FRE 401-403 |
| 35 | July 25, 1997 Pollution Legal Liability Application (COUNTY00011184-11221) | ICSOP objects<br>FRE 401-403<br>FRE 901 |
| 36 | October 29, 2008 Email from Bloomfield to AIG attaching Memo (COUNTY00050931; COUNTY00024487-24490) | ICSOP objects<br>FRE 401-403 |
| 38 | September 4, 1997 Robert Driver & Associates letter to SB County (COUNTY00011067-11071) | ICSOP objects<br>FRE 401-403 |
| 44 | July 29, 2016 ICSOP's Responses to 1st Set Rogs [Nos. 1-5] with Verification | ICSOP objects<br>FRE 401-403 |
| 58 | ICSOP Severity Claim-Set Notes (ISOP 005632-5634) | ICSOP objects<br>FRE 401-403 |

| 59 | Swett & Crawford Folder with 1997 Application and Attachments | ICSOP objects<br>FRE 401-403<br>FRE 901<br>Incomplete |
|---|---|---|
| 60 | April 8, 2016 ICSOP's Answer to Complaint | ICSOP objects<br>FRE 401-403 |
| 61 | January 25, 2008 Email from Schulz to Foggan (COUNTY00050830) | ICSOP objects<br>FRE 401-403 |
| 62 | November 14, 2007 Liability and Settlement Analysis by Gallagher and Gallagher (COUNTY00050834-50930) | ICSOP objects<br>FRE 401-403 |
| 63 | November 8, 2016 ICSOP's Responses to 2d Set Rogs [Nos. 6-16] with Verification | ICSOP objects<br>FRE 401-403 |
| 84 | August 25, 1997 Robert Driver letter  to SB County (COUNTY00011073-11074) | ICSOP objects<br>FRE 401-403 |
| 85 | March 17, 1998 Insurance Summary and Declarations page from Sirius Ins. Co. (COUNTY00051204-51219) | ICSOP objects<br>FRE 401-403 |
| 86 | January 8, 1998 Insurance policy from United Capital Ins. Co. (COUNTY00051220-51250) | ICSOP objects<br>FRE 401-403 |
| 91 | August 21, 1997 Email from Thompson to Corbett (COUNTY00011075) | ICSOP objects<br>FRE 401-403 |
| 102 | June 5, 2015 Letter from McCurdy re Schulz | ICSOP objects<br>FRE 401-403 |
| 119 | April 14, 2017 Walter J. Lipsman Expert Retention Agreement | See Obj. to 118.<br>ICSOP objects<br>FRE 401-403 |

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

| 120 | May 31, 2017 Supplemental Expert Opinion of Mitchell Lathrop | ICSOP objects FRE 401-403 FRE 801-802 Legal opinion *Daubert* |
|---|---|---|
| 121 | May 17, 2017 Walter J. Lipsman Invoice | See Obj. to 118 ICSOP objects FRE 401-403 |
| 123 | May 9, 2017 Expert Report of Jeffrey H. Kinrich including exhibits and appendices | ICSOP objects FRE 801-802 |
| 125 | [EDWARDS DEPO EXHIBITS] | Subject to County and ICSOP objections stated and/or made at trial |
| 126 | [HROMADKA DEPO EXHIBITS] | Subject to ICSOP objections stated and/or made at trial |
| 127 | [LATHROP DEPO EXHIBITS] | Subject to ICSOP objections stated and/or made at trial |
| 206 | July 29, 2016 ICSOP Responses to 1st RFAs [Nos. 1-31] | ICSOP objects FRE 401-403 |
| 207 | July 29, 2016 ICSOP Responses to 1st RFPs [Nos. 1-23] | ICSOP objects FRE 401-403 |
| 208 | July 29, 2016 ICSOP Responses to 1st Rogs [Nos. 1-5] | ICSOP objects FRE 401-403 |
| 209 | July 29, 2016 ICSOP Responses to 2nd RFPs [Nos. 23-32] | ICSOP objects FRE 401-403 |
| 210 | September 13, 2016 ICSOP Suppl Responses to 1st RFPs  [1-23] | ICSOP objects FRE 401-403 |
| 211 | September 14, 2016 ICSOP Suppl Responses to 1st RFAs [11, 12, 29, 30] | ICSOP objects FRE 401-403 |
| 212 | September 15, 2016 ICSOP Responses to 3rd RFPs [33-51] | ICSOP objects FRE 401-403 |
| 213 | September 22, 2016 ICSOP's 2nd Supplemental Responses to 1st RFAs [No. 14] | ICSOP objects FRE 401-403 |

| | | |
|---|---|---|
| 214 | November 8, 2016 ICSOP's Responses to 2nd Set Rogs [6-16] | ICSOP objects FRE 401-403 |
| 215 | November 8, 2016 ICSOP's Responses to 2nd Set RFAs [32-61] | ICSOP objects FRE 401-403 |
| 216 | May 1, 2017 ICSOP's Responses to 3rd Set of RFAs [62-88] | ICSOP objects FRE 401-403 |
| 217 | May 1, 2017 ICSOP's Responses to 3rd Set Rogs [17-25] | ICSOP objects FRE 401-403 |
| 218 | May 1, 2017 ICSOP's Responses to 4th Set RFPs [52-63] | ICSOP objects FRE 401-403 |
| 219 | June 7, 2016 ICSOP's Amended Initial Disclosures | ICSOP objects FRE 401-403 |
| 220 | May 12, 2017 ICSOP's Expert Witness Disclosures | ICSOP objects FRE 401-403 |
| 221 | June 9, 2017 ICSOP's Rebuttal Expert Disclosure | ICSOP objects FRE 401-403 |
| 222 | May 10, 2017 Expert Report of John E. Edwards including appendices | ICSOP objects FRE 801-802 Legal opinion |
| 223 | May 12, 2017 Expert Report of Theodore V. Hromadka, II including figures and appendices | ICSOP objects FRE 801-802 *Daubert* |
| 224 | May 10, 2017 Expert Report of Mitchell L. Lathrop including exhibits | ICSOP objects FRE 401-403 FRE 801-802 *Daubert* Legal opinion |
| 225 | May 31, 2017 Supplemental Expert Opinion of Mitchell Lathrop | ICSOP objects FRE 410-403 FRE 801-802 Legal opinion Work product |
| 226 | June 9, 2017 Rebuttal Expert Report of Theodore V. Hromadka, II including figures and appendices | ICSOP objects FRE 401-403 FRE 801-802 *Daubert* |

| | | | |
|---|---|---|---|
| 227 | June 7, 2017 Rebuttal Expert Report of John E. Edwards | ICSOP objects FRE 801-802 Legal opinion | |
| 245 | Bechtel, 1993, Expanded Site Inspection, Site EPA ID Number: CAT 080029630, December 9, 1993 (COUNTY00050963-50993) | ICSOP objects FRE 401-403 | |
| 246 | CH2MHill, 2006, Modeling the Fate of a Perchlorate Release at the 160-Acre Parcel in Rialto, California (COUNTY00083126-83140) | ICSOP objects Untimely production | |
| 247 | Dames & Moore, 1992. Stormwater Pollution Prevention Plan for Stormwater Runoff.  September 1992. (COUNTY00083141-83167) | ICSOP objects Untimely production | |
| 253 | Geo-Logic Associates, 2007, Final Closure Plan Former Broco Treatment, Storage, & Disposal Facility.  March 2007 (COUNTY00067355-68324) | ICSOP objects FRE 401-403 | |
| 254 | Ravi, V., Johnson, J. A., 1997, VLEACH A one-dimensional finite difference vadose zone leaching model, Version 2.2, Center for Subsurface Modeling Support, USEPA RSKERL, Ada, OK (COUNTY00083168-83237) | ICSOP objects Untimely production | |
| 255 | Rosenbloom, J. et al., 1993, Application of VLEACH to vadose zone transport of VOCs at an Arizona superfund site, Ground Water Monitor. Remed. (COUNTY00083238) | ICSOP objects Untimely production | |

- 52 -

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

| | | | |
|---|---|---|---|
| 258 | SB County Solid Waste Management Department, 1991. Drainage & Erosion Control Construction at Mid-Valley Landfill for the County of San Bernardino, September1991 (COUNTY00083239-83248) | ICSOP objects FRE 401-403 Untimely production | |
| 259 | SB County Solid Waste Management Division, 2001. Fill Sequence Plan Unit 2 Phase 3, August 2001 (COUNTY00083250) | ICSOP objects FRE 401-403 Untimely production | |
| 260 | SB County Solid Waste Management Division, 2001. Fill Sequence Plan Unit 1 Phase 1, August 2001 (COUNTY00083249) | ICSOP objects FRE 401-403 Untimely production | |
| 261 | United States 96th Congress, House of Representatives, Committee on Interstate and Foreign Commerce Subcommittee on Oversight and Investigations, Waste Disposal Site Survey Report together with Additional and Separate Views, October 1979 (COUNTY00083251-83790) | ICSOP objects FRE 401-403 Untimely production | |
| 262 | United States 96th Congress, House of Representatives, Committee on Interstate and Foreign Commerce Subcommittee on Oversight and Investigations, Waste Disposal Site Survey Report together with Additional and Separate Views, October 1979 – Waste Disposal Site Survey – Forms A through D (COUNTY00083791-83833) | ICSOP objects FRE 401-403 Untimely production | |
| 263 | Historical Aerial Photograph (Appendix D for Hromadka Expert Report) | ICSOP objects FRE 901 | |

| | | |
|---|---|---|
| 264 | Historical Topographic Maps (Appendix C for Hromadka Expert Report) | See objections to 223 FRE 901 |
| 265 | April 16, 2007 Declaration of Gary Lass in the matter of Perchlorate contamination at a 160-acre site in the Rialto area. (COUNTY00083834-83838) | ICSOP objects FRE 401-403 FRE 801-802 Untimely production |
| 268 | San Bernardino County, Auditor Division (COUNTY00059082) | ICSOP objects FRE 401-403 |
| 270 | July 14, 2014 Deposition of Claudia Rozzi | ICSOP objects that this is testimony, not a proper exhibit |
| 281 | Cal Recycle: Facility/Site Summary Details: Mid-Valley Sanitary Landfill, available at: http://www.calrecycle.ca.gov/SWFacilities/Directory/36-AA-0055/Detail (COUNTY00083839-83840) | ICSOP objects Untimely production |
| 282 | April 21, 2017 Deposition of Ken Hernandez | ICSOP objects that this is testimony, not a proper exhibit |
| 283 | April 13, 2017 Deposition of James Falbo | ICSOP objects that this is testimony, not a proper exhibit |
| 284 | April 26, 2017 Deposition of Michele Mehl | ICSOP objects that this is testimony, not a proper exhibit |
| 285 | April 27, 2017 Deposition to Royce Knight | ICSOP objects that this is testimony, not a proper exhibit |
| 286 | January 25, 2008 Letter from Schulz to Foggan (COUNTY00050831-50833) | ICSOP objects FRE 401-403 Settlement communication |
| 287 | April 28, 2017 Deposition of Gerry Newcombe | ICSOP objects that this is testimony, not a proper exhibit |
| 289 | December 29, 2014 Claims Handling Guidelines and Policy (LM022372-22395) | ICSOP objects FRE 401-403 |

| | | |
|---|---|---|
| 291 | October 29, 2004 Fontana Water Company letter to CA Regional Water Quality Control Board (COUNTY00082911-82969) | ICSOP objects<br>Untimely production |
| 292 | MVSL - Historical Summary - Monitoring Well F-4 (Abandoned) (COUNTY00082970) | ICSOP objects<br>Untimely production<br>Incomplete |
| 293 | Well Data - F-10A (COUNTY00082971-82982) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 294 | Well Data - F-10B (COUNTY00082983-82986) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 295 | Well Data - F-10C (COUNTY00082987-82988) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 296 | Fontana Water Company Water Well Levels Data - Well F-13A (COUNTY00082989-82993) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 297 | Well Data - #35 (COUNTY00082994-83001) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 298 | Well Data - F-49A (COUNTY00083002-83003) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 299 | Figure 4 - Combined Pumping in Model Area by City of Rialto, FWC, and WVWD (COUNTY00083004-83013) | ICSOP objects<br>Untimely production<br>FRE 901 |
| 300 | FWC - Historical Summary Data - Monitoring Well F-10B (COUNTY00083014-83081) | ICSOP objects<br>Untimely production<br>FRE 901<br>Incomplete |
| 302 | January 7, 1958 County Grant Deed (COUNTY00083841-83842) | ICSOP objects<br>Untimely production |

| 303 | August 9, 1971 County Trustee's Deed (COUNTY00083843-83845) | ICSOP objects<br>Untimely production |
|---|---|---|
| 304 | August 28, 1972 County Grant Deed (COUNTY00083848-83849) | ICSOP objects<br>Untimely production |
| 305 | June 15, 1973 County Grant Deed (COUNTY00083846-83847) | ICSOP objects<br>Untimely production |
| 308 | County Backup Costs (COUNTY00012213-16325) | ICSOP objects as "exhibit" consists of thousands of pages containing multiple documents  that are not properly described<br>FRE 401-403 |
| 309 | County Backup Costs (COUNTY00016326-18200) | ICSOP objects as "exhibit" consists of thousands of pages containing multiple documents that are not properly described<br>FRE 401-403 |
| 310 | County Backup Costs (COUNTY00018259-23285) | ICSOP objects as "exhibit" consists of thousands of pages containing multiple documents that are not properly described<br>FRE 401-403 |
| 311 | County Backup Costs (COUNTY00023286-23596) | ICSOP objects as "exhibit" consists of hundreds of pages containing multiple documents that are not properly described<br>FRE 401-403 |
| 312 | County Backup Costs (COUNTY00023597-24055) | ICSOP objects as "exhibit" consists of hundreds of pages containing multiple documents that are not properly described<br>FRE 401-403 |
| 313 | March 14, 2017 Roux Associates, Inc. Expert Retention Agreement | ICSOP objects FRE 401-403 |
| 314 | March 17, 2017 Roux Associates, Inc. Invoice | ICSOP objects FRE 401-403 |

| 315 | April 14, 2017 Roux Associates, Inc. Invoice | ICSOP objects FRE 401-403 |
| 216 | May 12, 2017 Roux Associates, Inc. Invoice | ICSOP objects FRE 401-403 |

The County objects to Exhibit Nos. 51, 70-75, 78-79, 93-94, 101, 114, 118-119, 121, 125, 128, 201-202, 228-229, 270, 282-285, 287, 307, and 317. The objections and grounds therefor are:

| No. of Exhibit | Description | Objection |
| --- | --- | --- |
| 51 | July 31, 2015 Letter from County to ICSOP (COUNTY00006628- 6630) | County objects: FRE 401-403 (settlements not broader than Order) |
| 70 | February 20, 1998 Memo from Gary Kovall and Joel Moskowitz to Conway Collis (COUNTY00012080-12081) | County objects: FRE 401-403 FRE 408 FRE 901 Privileged |
| 71 | August 7, 1998 Letter from Dixie Lass to Gerry Newcombe (COUNTY00048940) | County objects: FRE 401-403 FRE 408 FRE 901 Privileged |
| 72 | September 1, 1998 Email and attachment from Gary Kovall to Gindler Burton (COUNTY00011304-11308) | County objects: FRE 401-403 (settlements not broader than Order) |

- 57 -

| | | |
|---|---|---|
| 73 | September 15, 1998 Interoffice memo from Gerry Newcombe to the Board of Supervisors (COUNTY00011295-11296) | County objects:<br>FRE 401-403 (settlements not broader than Order) |
| 74 | October 6, 1998 Facsimile from Dixie Lass to Gerry Newcombe and attachment (COUNTY00051173-51180) | County objects:<br>FRE 401-403<br>FRE 901 |
| 75 | November 10, 1998 Report/recommendation by County | County objects:<br>FRE 401-403 (settlements not broader than Order) |
| 78 | November 17, 1998 Report/recommendation by County | County objects:<br>FRE 401-403 (settlements not broader than Order) |
| 79 | May 16, 2000 Report/Recommendation to Board of Supervisors enclosing Fontana Union Water Settlement Agreement | County objects:<br>FRE 401-403 (settlements not broader than Order) |
| 93 | July 15, 1998 Facsimile and attachment from Gerry Newcombe to Pamela Thompson (COUNTY00011032-11034) | County objects:<br>FRE 401-403 (settlements not broader than Order) |
| 94 | September 30, 2002 Letter from Pamela Thompson to United National Insurance Company (COUNTY00048953-48956) | County objects:<br>FRE 401-403 |

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

| 101 | May 10, 2017 Expert Report of Adam H. Love, Ph.D. including exhibits [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
|---|---|---|
| 114 | June 6, 2017 Expert Rebuttal Report of Adam H. Love, Ph.D. [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
| 118 | May 8, 2017 Expert Witness Report of Walter J. Lipsman [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
| 119 | April 14, 2017 Walter J. Lipsman Expert Retention Agreement | See Obj. to 118. Relevance |
| 121 | May 17, 2017 Walter J. Lipsman Invoice | See Obj. to 118 ICSOP objects FRE 401-403 |
| 125 | [EDWARDS DEPO EXHIBITS] | Subject to County and ICSOP objections stated and/or made at trial |
| 128 | [ROBERTSON DEPO EXHIBITS] [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
| 201 | May 12, 1998 Letter from Terry Cook to Conway Collis (COUNTY00051269) | County objects: FRE 401-403 FRE 901 |
| 202 | May 15, 1998 Letter from Conway Collis to Fontana Water Company (COUNTY00012053-12054) | County objects: FRE 401-403 FRE 901 |

| | | |
|---|---|---|
| 228 | June 9, 2017 Rebuttal Expert Report of James A. Robertson including exhibits [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
| 229 | June 6, 2017 Rebuttal Expert Report of Adam H. Love, Ph.D. [subject to objection] | The County will object to witness testimony and report under Daubert and legal opinion |
| 270 | July 14, 2014 Deposition of Claudia Rozzi | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 282 | April 21, 2017 Deposition of Ken Hernandez | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 283 | April 13, 2017 Deposition of James Falbo | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 284 | April 26, 2017 Deposition of Michele Mehl | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |

| 285 | April 27, 2017 Deposition to Royce Knight | Subject to County objections stated and/or made at trial<br>ICSOP objects that this is testimony, not a proper exhibit |
| 287 | April 28, 2017 Deposition of Gerry Newcombe | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 307 | June 15, 2017 Deposition of Adam H. Love, Ph.D. [subject to objection] | Subject to County objections stated and/or made at trial as well as *Daubert* and legal opinion objections |
| 317 | Numerical Groundwater Flow Model Report, Rialto Colton Basin, June 2012 CH2MHILL | County objects:<br>FRE 401-403 |

## 11.   WITNESS LISTS

Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

The County has marked depositions it may present as evidence in accordance with L.R. 16-2.7.  ICSOP has marked depositions it may present as evidence in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: Michele Mehl, Royce Knight, James Falbo, and Pamela Thompson.

The County objects to the presentation of testimony by deposition of Pamela Thompson on the ground that her testimony is irrelevant, and if such testimony is allowed, the County objects to the deposition to the extent she is available as a witness. FRE 401-403.  ICSOP objects to the presentation of testimony by

- 61 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

deposition of James Falbo on the ground that his testimony is irrelevant.  FRE 401-403.  Both parties object to the presentation of deposition testimony that does not satisfy the requirements of FRCP 32(a).

**12.  LAW AND MOTION MATTERS AND MOTIONS IN LIMIINE**

The following law and motion matters and motions in limine, and no others, are pending and contemplated: Three motions are currently pending with a hearing set for July 21, 2017 – (1) the County's motion for partial summary judgment on notice; (2) the County's motion for reconsideration; and (3) ICSOP's motion for partial summary judgment on number of occurrences and attorneys' fees.

The County anticipates the following additional motions: (1) County motion in limine to exclude testimony and related evidence of Walter J. Lipsman; (2) County motion in limine to exclude or limit testimony and related evidence of Dr. Adam Love's first and second opinions; (3) County motion in limine to exclude or limit testimony and related evidence of Dr. Adam Love's third, fourth, and fifth opinions; (4) County motion in limine to exclude or limit testimony and evidence of James A. Robertson; (5) County motion in limine to exclude non-disclosed evidence; (6) County motion in limine to exclude mediation communications and notice issues; (7) County motion in limine to exclude testimony and evidence contrary to California law; (8) County motion in limine to exclude testimony and evidence contrary to the Policy language; (9) County motion in limine to exclude evidence of prejudice caused by settlements; (10) County motion in limine regarding lost documents; (11) County motion in limine to preclude experts from testifying as to legal opinions; and (12) County motion in limine re: no references to anti-stacking order by the Court and related items.

ICSOP anticipates the following additional motions: (1) ICSOP motion in limine to exclude testimony of Ken Hernandez; (2) ICSOP motion in limine to exclude testimony of Mitchell Lathrop; (3) ICSOP motion in limine to exclude

testimony of James Falbo; (4) ICSOP motion in limine to preclude or limit
testimony of Theodore Hromadka; (5) ICSOP motion in limine to preclude use of
documents produced after discovery cutoff date; and (6) ICSOP motion regarding
deposition of Gary Lass.

**13.     BIFURCATION**

Bifurcation of the following issues for trial is ordered. None.

**14.**     The foregoing admissions having been made by the parties, and the
parties having specified the foregoing issues remaining to be litigated, this Final
Pretrial Conference Order shall supersede the pleadings and govern the course of the
trial of this cause, unless modified to prevent manifest injustice.


Dated: _____, 20_____.


_____
Hon. Philip S. Gutierrez


Approved as to form and content.


_____
Kevin G. McCurdy, Attorney for ICSOP


_____
Marc Maister, Attorney for the County