# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA<br><br>Plaintiff,<br><br>v.<br><br>THE COUNTY OF SAN BERNARDINO, a California public entity<br><br>Defendant. | CASE NO. EDCV16-00128 PSG (SSx)<br><br>**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**[1] |
| COUNTY OF SAN BERNARDINO, a California public entity<br><br>Counterclaimant,<br><br>v.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania insurance company<br><br>Counterdefendant. | Courtroom:   6A<br>PTC Date:   August 21, 2017<br>PTC Time:   2:30 p.m.<br><br>Honorable Philip S. Gutierrez<br><br>Complaint Filed:  January 21, 2016<br><br>Trial Date:  September 5, 2017 |

---

[1] The parties hereby submit this amended [proposed] pretrial conference order pursuant to the Court's directive at the July 21, 2017 hearing and are concurrently submitting amended exhibit and witness lists.  The parties are of the understanding that the Court did not want amended memoranda of fact and law; the parties will submit jury instructions and trial briefs pursuant to the Court's schedule.

62880

# Table of Contents

1.   THE PARTIES ........................................................................1

2.   FEDERAL JURISDICTION AND VENUE .....................................1

3.   TRIAL TIME ..........................................................................2

4.   JURY TRIAL ..........................................................................2

5.   ADMITTED FACTS..................................................................2

6.   STIPULATED FACTS SUBJECT TO OBJECTION ..........................4

7.   CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL.....................4

      The County's Counterclaims and Affirmative Defenses.......................4

      ISCOP's Claims and Defenses .........................................10

8.   ISSUES REMAINING TO BE TRIED ...........................................20

9.   DISCOVERY .........................................................................21

10.  DISCLOSURES ......................................................................21

11.  WITNESS LISTS ....................................................................32

12.  LAW AND MOTION MATTERS AND MOTIONS IN LIMINE..............32

McCURDY & FULLER LLP
565 Middlefield Road, Suite 100
Menlo Park, CA 94025
(650) 618-3500

Following pretrial proceedings, pursuant to F. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

## 1.    THE PARTIES

The parties are plaintiff and counter-defendant The Insurance Company of the State of Pennsylvania ("ICSOP") and defendant and counterclaimant the County of San Bernardino (the "County").

Each of these parties has been served and has appeared.  All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are ICSOP's First Amended Complaint (Dkt. 81), the County's First Amended Answer (Dkt. 84), the County's Corrected Counterclaim (Dkt. 16) and ICSOP's Answer to the County's Counterclaim (Dkt. 18).

The Court has resolved ICSOP's first cause of action (Dkts. 45, 181 at 5). The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved ICSOP's second and third causes of action.  (Dkt. 181.)

ICSOP is no longer pursuing its fourth cause of action for declaratory relief regarding the duty to indemnify.  ICSOP also withdraws its first, third, twelfth and thirteenth affirmative defenses.  The Court's order on the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved ICSOP's second, fifth, sixth, seventh and eleventh affirmative defenses.

Since ICSOP has no affirmative claims left in the case, it appears that the County's affirmative defenses are not necessary.

## 2.    FEDERAL JURISDICTION AND VENUE

Federal jurisdiction is invoked under 28 U.S.C. § 1332 because there is complete diversity of citizenship between and among the County and ICSOP, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest

and costs.  The facts requisite to federal jurisdiction are admitted.

Venue is invoked under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted by the parties occurred in this district. Specifically, the underlying claims against the County were made in this district, and the insurance policies at issue were delivered to the County in this district.

## 3.    TRIAL TIME

The County estimates the trial will take five trial days.  ICSOP estimates the trial will take five trial days.

## 4.    JURY TRIAL

The trial is to be a jury trial.  Pursuant to the Court's May 3, 2016 Order for Jury Trial (Dkt. 23), thirty-five (35) days before trial, ICSOP served ICSOP's proposed jury instructions and special verdict forms on the County.  Twenty-eight (28) days before trial, the County served on ICSOP the County's objections to ICSOP's instructions together with additional instructions the County intends to offer.  Twenty–one (21) days before trial, ICSOP will serve on the County ICSOP's objections to the County's instructions.  Twenty-one (21) days before trial, counsel will meet and confer to attempt to come to an agreement on the proposed jury instructions.

Sixteen (16) days before trial, counsel will file with the Court a joint set of jury instructions on which there is agreement.  At the same time, each party will file its proposed jury instructions which are objected to by the other party, accompanied by points and authorities in support of those instructions.

## 5.    ADMITTED FACTS

The following facts are admitted and require no proof:

      a)    The County is, and at all times herein mentioned was, a county organized and existing under the laws of California.

      b)    ICSOP is, and at all times herein mentioned was, a corporation organized and existing under the laws of Pennsylvania with its

principal place of business in New York, and was authorized to do business in California.

c)  ICSOP issued the following umbrella liability policies of insurance to the County: 426-0772 (effective July 23, 1966 to July 23, 1969) (the "66-69 ICSOP Policy"), 429-0989 (effective July 23, 1969 to July 23, 1972) (the "69-72 ICSOP Policy") and 427-21195 (effective July 23, 1972 to July 23, 1975) (the "72-75 ICSOP Policy"). The 66-69 ICSOP Policy, the 69-72 ICSOP Policy and the 72-75 ICSOP Policy are collectively referred to as the "ICSOP Policies."

d)  The County paid all premiums on the ICSOP Policies as they became due and payable.

e)  The County owns and currently operates the Mid-Valley Sanitary Landfill (the "MVSL") located in the City of Rialto.

f)  The MVSL is currently comprised of 5 units, denominated by the County as Unit 1, Unit 2, Unit 3, Unit 4 and Unit 5, respectively.

g)  The land underlying Unit 1 of the MVSL was acquired by the County from Virg & Co. via a grant deed dated January 7, 1958.

h)  Unit 1 of the MVSL began landfilling operations in or around 1958.

i)  The land underlying Unit 2 of the MVSL was acquired by the County from Fred M. Schulz and Walter M. Pointon, as Trustees of the Testamentary Trust Estate of Edward Frederick Schulz, in a series of three separate deeds dated August 9, 1971, August 28, 1972, and June 15, 1973, respectively.

j)  On October 9, 1998, the California Regional Water Quality Control Board for the Santa Ana Region (the "RWQCB") issued cleanup and abatement order 98-96 to the County (the "Order").

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

k)   The County incurred, and continues to incur, costs and expenses in complying with its obligations arising out of and related to the Order.

l)   By letter dated August 27, 2014 the County forwarded documents to ICSOP concerning costs and expenses the County incurred in response to the Order.  The letter requested that ICSOP acknowledge its responsibility to defend and indemnify the County concerning the Order within 30 days.

m)   By letter dated September 3, 2014, ICSOP acknowledged receipt of the documents accompanying the August 27, 2014 letter.

n)   On April 20, 2017, ICSOP issued a $9 million check to the County in partial payment of amounts sought by the County in connection with the Order, and stated that the payment was made subject to a reservation of rights, including the right to seek complete recoupment of the payment.

## 6.   STIPULATED FACTS SUBJECT TO OBJECTION

The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

## 7.   CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL

Counsel for the parties agreed at their in-person pretrial conference meeting that, since this is a declaratory judgment action, the County shall present its claims first, even though ICSOP filed the initial Complaint.  With the resolution of all of ICSOP's remaining affirmative claims, there is no other option.

**The County's Counterclaims and Affirmative Defenses:**

a)   Before the Court's Order and ICSOP's dropping of its fourth cause of action, the County asserted the following claims against ICSOP and affirmative defenses to ICSOP's claims:

i.   <u>Counterclaim 1</u>: Breach of Contract – Failure to Pay

"Ultimate Net Loss"

    ii.    <u>Counterclaim 2</u>: Declaratory Relief – ICSOP is Obligated under the ICSOP Policies to Pay for Loss Which the County Will Incur as a Result of the Contamination

    iii.    <u>Affirmative Defense 2</u>: Estoppel

    iv.    <u>Affirmative Defense 3</u>: Waiver

    v.    <u>Affirmative Defense 4</u>: Laches

    vi.    <u>Affirmative Defense 5</u>: Unclean Hands

    vii.    <u>Affirmative Defense 6</u>: Breach of Contract

    viii.    <u>Affirmative Defense 7</u>: Ratification

    ix.    <u>Affirmative Defense 8</u>: Unjust Enrichment

    x.    <u>Affirmative Defense 9</u>: Custom and Usage

    xi.    <u>Affirmative Defense 10</u>: Breach of Fiduciary Duty

    xii.    <u>Affirmative Defense 11</u>: Constructive/Actual Notice

    xiii.    <u>Affirmative Defense 12</u>: No Prejudice

Since ICSOP has dropped its fourth cause of action, however, and the Court has resolved the other three, ICSOP has no remaining affirmative claims for relief. Accordingly, the trial has become simplified, so that the County will present its affirmative claims (although initially designated counterclaims), and ICSOP will present affirmative defenses. Thus, there is no need for affirmative defenses on the County's part, since ICSOP is presenting no affirmative claims.

    b)  The elements required to establish the County's claims are:

    i.    <u>Counterclaim 1</u>: To establish breach of an insurance contract by ICSOP, the County must prove only: (1) the County suffered a loss, all or part of which was covered under the ICSOP Policies; (2) ICSOP was informed of the loss; and (3) the amount of the covered loss that ICSOP failed to pay. *See* California Civil Jury Instructions § 2300 (2017);

1

2         *Isaacson v. California Insurance Guarantee Assn.*, 44 Cal. 3d

3         775, 791 (Cal. 1988); Croskey et al., California Practice

4         Guide: Insurance Litigation (The Rutter Group 2017) ¶¶

5         15:52, 15:924.

6         The County indicates that Element (2) has been established by

7         the Court's July 24 Order.

8         ICSOP responds that the Court's Order resolved ICSOP's late

9         notice defense. Element (2) as framed by the County is not

10         limited to late notice.

11

12    ii.   <u>Counterclaim 2</u>: To establish the right to a judicial declaration

13         against ICSOP as to its future obligations under the Policies,

14         the County must prove only that: (1) the County suffered or

15         will suffer a loss, all or part of which was or is covered under

16         the ICSOP Policies; and (2) ICSOP was informed of the loss.

17         *See* California Civil Jury Instructions § 2300 (2017);

18         *Isaacson v. California Insurance Guarantee Assn.*, 44 Cal. 3d

19         775, 791, 750 P.2d 297, 308 (Cal. 1988); Croskey et al.,

20         California Practice Guide: Insurance Litigation (The Rutter

21         Group 2017) ¶¶ 15:52, 15:924.

22         The County indicates that Element (2) has been established by

23         the Court's July 24 Order.

24         ICSOP responds that the Court's Order resolved ICSOP's late

25         notice defense. Element (2) as framed by the County is not

26         limited to late notice.

27

28

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

c) In brief, the key evidence the County relies on for each of the claims is:

    i.   Generally, for all claims:

- The ICSOP Policies;
- Documents, percipient witness testimony, and expert testimony regarding the occurrences and losses covered by the ICSOP Policies (including but not limited to the testimony of Dr. Hromadka and County personnel);
- Documents, percipient witness testimony, and expert testimony regarding communications and negotiations between ICSOP and the County relating to the ICSOP Policies;
- The Order, including all amendments and communications regarding the Order and its implementation;
- Documents, percipient witness testimony, and expert testimony regarding communications between the County and ICSOP relating to the County's obligations, including those set forth in the Order;
- The August 27, 2014 letter and supporting materials from the County to ICSOP documenting the costs and expenses that the County incurred in connection with the contamination at issue in the Order;
- Documents and testimony regarding the other documentation the County provided ICSOP of costs and expenses incurred by the County to investigate, remediate and protect the health and safety of the residents and citizens of the County of San Bernardino against the contamination at issue in the Order (including but not

limited to the testimony of Mr. Kinrich and Mr. Edwards);

- Documents and testimony regarding the substantial costs and expenses, exceeding $29 million, the County incurred, and continues to incur, in complying with its obligations, including those set forth in the Order;

- Documents and testimony regarding ICSOP's refusal to acknowledge coverage of the County's claims relating to its costs and expenses incurred by the County to investigate, remediate and protect the health and safety of the residents and citizens of the County of San Bernardino against the contamination at issue in the Order; and

- Documents, testimony, and expert opinion regarding ICSOP's responses to the County's claim for coverage.

ii.   Counterclaim 1: (1) ICSOP has breached its contractual obligations under the Policies, including ICSOP's duty to indemnify the County against "Ultimate Net Loss" that the County has incurred as a result of the contamination at issue in the Order, including, without limitation, "expenses for…lawyers….and investigators and other persons, and for litigation, settlement, adjustment and investigation of" the contamination at issue in the Order, as reasonably necessary to avoid and/or minimize the County's potential liability in connection with such Order, and to protect the health and safety of the citizens of the County of San Bernardino.

ICSOP has delayed, refused and failed to pay any such "Ultimate Net Loss" incurred by the County as a result of the contamination at issue in the Order; while ICSOP has provided an illusory $9 million check, it has stated that it will

attempt to recoup that money if it prevails at trial.

ICSOP has never provided the County with its coverage determination, and has instead forced the County into expensive litigation. These Policies cover pollution liability of the County. They have no aggregate limits for the number of occurrences they cover. The current dispute essentially centers around the number of occurrences (the County contends there are at least 10 and ICSOP says there is only one). The Court rejected ICSOP's contention that there was one occurrence as a matter of law in its July 24, 2017 Order. The County will present scientific and historical evidence that, in accordance with California law and that Order, there were at least ten different and distinct release events from different locations throughout the Landfill in the Policy periods, as shown by well data, computer modeling and historical references.

As a direct and proximate result of ICSOP's breach of contract, the County has been required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement. To date, this exceeds $29 million.

iii. Counterclaim 2: (1) ICSOP has breached its contractual obligations under the Policies, including ICSOP's duty to indemnify the County against "Ultimate Net Loss" that the County has incurred, and continues to incur, as a result of the contamination at issue in the Order, including, without limitation, "expenses for…lawyers….and investigators and other persons, and for litigation, settlement, adjustment and investigation of" the contamination at issue in the Order, as

reasonably necessary to avoid and/or minimize the County's potential liability in connection with the contamination at issue in the Order, and to protect the health and safety of the citizens of the County of San Bernardino.

ICSOP has delayed, refused and failed to pay any such "Ultimate Net Loss" incurred by the County as a result of the contamination at issue in the Order; while ICSOP has provided an illusory $9 million check, it has stated that it will attempt to recoup that money if it prevails at trial.

ICSOP has never provided the County with its coverage determination, and has instead forced the County into expensive litigation. These Policies cover pollution liability of the County. They have no aggregate limits for the number of occurrences they cover. The current dispute centers around the number of occurrences (the County contends there are at least 10 and ICSOP says there is only one. The Court rejected ICSOP's contention that there was one occurrence as a matter of law in its July 24, 2017 Order. The County will present scientific and historical evidence that, in accordance with California law and that Order, there were at least ten different and distinct release events from different locations throughout the Landfill in the Policy periods, as shown by well data, computer modeling and historical references.

As a direct and proximate result of ICSOP's breach of contract, the County has been, and continues to be, required to incur and pay tens of millions of dollars to respond to property damage claims without reimbursement. ICSOP should be ordered to pay the County's future costs pursuant to

its Policies.

**ICSOP's Claims and Defenses:**

     (a)    ICSOP asserted the following claims against the County:

     First Cause of Action - Declaratory Relief Regarding the Duty to Indemnify –
The Limits of Liability of the ICSOP Policies Cannot be Stacked

     The non-cumulation provisions in ICSOP Policy Nos. 426-0772, 429-0989 and 4272-1195 ("ICSOP Policies") preclude the County from stacking the limits of liability of the ICSOP Policies regardless of whether property damage takes place over more than one ICSOP Policy period. The Court has resolved ICSOP's first cause of action in ICSOP's favor.  (Dkts. 45, 181 at 5.) The County maintains its right of appeal.

     Second Cause of Action - Declaratory Relief Regarding Duty to Indemnify –
Breach of Condition Precedent as to Notice

     The County breached Condition G, Notice of Occurrence, in the ICSOP Policies.  The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses resolved this claim in favor of the County. (Dkt. 181).  ICSOP maintains its right of appeal.

     Third Cause of Action - Declaratory Relief Regarding Duty to Indemnify-
Breach of Condition Precedent as to Liability Assumed in Settlement

     The County breached Condition J, Loss Payable of the ICSOP Policies.  The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses resolved this claim in favor of the County. (Dkt. 181). ICSOP maintains its right of appeal.

     (b)    The elements required to establish ICSOP's claims are:

     First Cause of Action - The Court has resolved ICSOP's first cause of action in ICSOP's favor.  (Dkts. 45, 181 at 5.)

     Second Cause of Action - The Court has resolved ICSOP's second cause of action in favor of the County.  (Dkt. 181).

Third Cause of Action - The Court has resolved ICSOP's third cause of action in favor of the County. (Dkt. 181).

(c)     The key evidence ICSOP relies on for each of the claims is:

First Cause of Action

Not applicable for the reasons discussed above.

Second Cause of Action

Not applicable for the reasons discussed above.

Third Cause of Action

Not applicable for the reasons discussed above.

(a)     ICSOP asserted the following affirmative defenses to the County's counterclaim.

Second Affirmative Defense – The County's claims are barred by the doctrines of laches, unclean hands, waiver and/or equitable estoppel.

Fourth Affirmative Defense – The County's claims are barred, in whole or in part, by the terms, definitions, exclusions, conditions and other limitations in the ICSOP Policies.

Fifth Affirmative Defense – The County's claims are barred to the extent the County failed to comply with, or perform the obligations required by the ICSOP Policies.

Sixth Affirmative Defense – The County's claims are barred to the extent that Notice of the Order was not provided in the manner prescribed by the ICSOP Policies and/or as required by law.

Seventh Affirmative Defense – The County's claims are barred to the extent the County failed to assist and/or cooperate with ICSOP as required by the ICSOP Policies or as implied by law.

Eighth Affirmative Defense – The County's claims are barred to the extent ICSOP may be entitled to contribution, setoff, indemnification, apportionment, or other relief from the County and/or any other insurer.

Ninth Affirmative Defense – The County's claims are barred to the extent the County failed to mitigate, minimize or avoid any damages it allegedly sustained.

Tenth Affirmative Defense – The County's claims are barred to the extent that unreasonable and/or unnecessary costs were expended by or on behalf of the County in responding to the order.

Eleventh Affirmative Defense – The County's claims are barred to the extent that the County voluntarily paid, assumed, and/or incurred expenses to defend or settle the underlying claims without ICSOP's consent.

Fourteenth Affirmative Defense – The County's claims are barred by the applicable statutes of limitation.

(b)     The elements required to establish ICSOP's affirmative defenses are:

Second Affirmative Defense – The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved this affirmative defense. (Dkt. 181).

Fourth Affirmative Defense – An occurrence means "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in… property damage…during the policy period.  All such exposure to substantially the same general conditions at or emanating from one premises location will be deemed one occurrence."  Property damage is defined as "loss of or direct damage to or destruction of tangible property (other than property of the Named Assured)."  ICSOP Policy language.

The County contends that the Policy must be read as a whole, which ICSOP does not do, including other uses of the word "occurrence," "premises," and "loss"/"such loss"/"such losses."  The County's expert, Dr. Hromadka, and its percipient witnesses will provide scientific and historical evidence showing multiple occurrences under the Policy language and this Court's July 24 Order (Dkt. 181) ("The ICSOP Policies define 'occurrence' in the disjunctive: an event *or* continuous or repeated exposure to conditions.").

ICSOP responds that the definition of occurrence is unambiguous.  ICSOP contends that the evidence, including the expert testimony of Adam Love, will demonstrate that the damage for which the County seeks coverage resulted from continuous and repeated exposure to substantially the same general conditions, the release over many years of PCE and its breakdown products from the County's landfill.

Fifth Affirmative Defense – The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved this affirmative defense.  (Dkt. 181).

Sixth Affirmative Defense – The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved this affirmative defense.  (Dkt. 181).

Seventh Affirmative Defense – The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved this affirmative defense.  (Dkt. 181).

Eighth Affirmative Defense – Damages mean the amount of money that will fairly and reasonably compensate the County for any injury caused by ICSOP.  See Ninth Circuit Manual of Model Civil Jury Instructions § 5.1.

The County contends that the only argument made by ICSOP as to this affirmative defense is the conditional $9 million payment, and since this payment was only conditionally made with ICSOP claiming a full right of recoupment, no set-off or credit is available.

ICSOP responds that the County's comment does not address the elements of this defense.

Ninth Affirmative Defense – The County failed to use reasonable efforts to mitigate damages, and the amount by which damages would have been mitigated.

The County states that it has no duty to mitigate damages vis-à-vis ICSOP.

The County responds to ICSOP's claim that the settlement agreements were not proper mitigation as follows: the settlement agreements were dictated by the Order, and that the Policies cover settlements entered into by the Assured, giving ICSOP no veto power over these agreements.  The County further contends that the Regional Water Quality Control Board did and does have the power to set the level of contaminants to non-detect, not the *Maximum* contaminant level.  The County notes that it does not have the power to override the Board's determinations or to establish a time limit for Board Orders.  Finally, the County contends that this argument misrepresents the necessity of continued treatment according to the scientific data.

ICSOP responds that the County's comment does not address the elements of this defense.

Tenth Affirmative Defense – The County's efforts to comply with CAO 98-96 must constitute reasonable and necessary efforts to avoid or at lease minimize liability and the expenses incurred by the County must be reasonable and necessary for that purpose.  *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 61.

The County states that it has no duty to mitigate damages vis-à-vis ICSOP. The County responds to ICSOP's claim that the settlement agreements were not proper mitigation as follows: the settlement agreements were dictated by the Order, and that the Policies cover settlements entered into by the Assured, giving ICSOP no veto power over these agreements.  The County further contends that the Regional Water Quality Control Board did and does have the power to set the level of contaminants to non-detect, not the *Maximum* contaminant level.  The County notes that it does not have the power to override the Board's determinations or to establish a time limit for Board Orders.  Finally, the County contends that this argument misrepresents the necessity of continued treatment according to the scientific data.

ICSOP responds that the County's comment does not address the elements of

this defense.

Eleventh Affirmative Defense – The Court's order granting the County's motion for partial summary judgment on ICSOP's late notice defenses has resolved this affirmative defense. (Dkt. 181).

Fourteenth Affirmative Defense – The County did not file its suit within four years from the date the County alleges ICSOP breached the insurance contracts and the County incurred harm more than four years before the date of filing this suit. See CACI 338; California Code of Civil Procedure § 337(1).

The County responds: ICSOP is attempting to resurrect a late notice defense in contravention of this Court's July 24, 2017 Order on the parties' summary judgment motions. ICSOP's position necessarily depends on the notion that ICSOP breached its duties more than four years before it filed this suit. It further follows that ICSOP's position requires that the County gave notice before the breach, which under this theory must have occurred before January 2012, which ICSOP has vehemently denied. The Court found that ICSOP waived any notice defense, yet ICSOP is still attempting to use its delay to defeat the County's claim, reversing its position and saying it did receive notice in 1997 or 2008. This gamesmanship is not allowed by either the Court's Order or evidentiary principles – ICSOP has presented no evidence of the timing of its breach, or any argument against the tolling of the statute based on its failure to provide a coverage determination. Indeed, ICSOP is barred by its limited interrogatory responses in presenting this defense: its only factual basis for the statute of limitations defense is based on the allegation of constructive notice in 1997, which is no longer at issue. (ICSOP Response to Special Interrogatory No. 15).

Furthermore, ICSOP admits in its Response to Special Interrogatory No. 17 that it has not denied coverage, even after it commenced this case; accordingly, it has judicially admitted facts that defeat this defense, since the statute of limitations

clock has not begun to run.  While the statute of limitations on a breach of contract action is four years, it does not begin to run until the breach occurs, and in an action to recover policy benefits, the statute does not begin to run until the insurer's unconditional denial of the insured's claim.  Croskey et al., *California Practice Guide: Insurance Litigation* (The Rutter Group 2017) ¶ 12:1143 (citing *State Farm Fire & Cas. Co. v. Superior Court*, 210 Cal. App. 3d 604, 609 (Cal. Ct. App. 1989)); Cal. Civ. Proc. Code § 337 (2017).  Also, given that ICSOP still has not provided a coverage determination to the County, the statute of limitations on the County's claim has not, even begun to run.  ICSOP Response to Special Interrogatory No. 17; April 27, 2017 Deposition Testimony of Royce Knight (ICSOP Rule 30(b)(6) witness) at 50:9-51:1 ("Q. Has AIG made a determination as of today as to whether it will affirm or deny coverage?  A. No, a coverage position on affirming or denying coverage has not been finally take at this point.").  Any statute of limitations is tolled while the insurer investigates the claim.  *Flintkote Co. v. General Accident Assur. Co. of Canada*, 480 F. Supp. 2d 1167, 1178-79 (N.D. Cal. 2007).

     ICSOP responds that the County's comment does not address the elements of this defense.  In addition, the County's interrogatory responses allege that ICSOP breached its policies in 1997.  County Response to ICSOP Interrogatory No. 17.  There is no evidence that ICSOP was investigating the claim at any time between 1997, when the County alleges breach, and 2014 and thus, the County's tolling argument fails.  ICSOP is not required to concede it breached the contract in order to assert a statute of limitations defense as the County suggests.  Throughout this case, the County has asserted that ICSOP was notified of the claim in 1997 and again in 2008, and that ICSOP breached its obligations by not accepting coverage for the claim when notice was provided.  Tolling principles applicable in situations where the insurer is alleged to have a duty to defend are not applicable here, as ICSOP does not have a duty to defend.  See *Northstar Reinsurance Corp. v. Superior Court* (1992) 10 Cal.App.4th 1815, 1823.

(c)     The key evidence ICSOP relies on for each affirmative defense is:

Second Affirmative Defense

Not applicable for the reason discussed above.

Fourth Affirmative Defense

(1) ICSOP's expert witness, Adam Love, will explain that the County cannot demonstrate that the property damage for which it has been held liable with respect to CAO 98-96 took place between July 23, 1966 and July 23, 1975, and any effort to do so would be speculative.  (2) Mr. Love's testimony will also establish that the property damage for which the County has been held liable with respect to CAO 98-96 arose out of no more than a single occurrence as defined in the ICSOP Policies.

The County responds that the County's expert, Dr. Hromadka, and its percipient witnesses will provide scientific and historical evidence showing multiple occurrences under the Policy language and this Court's July 24 Order (Dkt. 181) ("The ICSOP Policies define 'occurrence' in the disjunctive: an event *or* continuous or repeated exposure to conditions.").

ICSOP responds that Appendix A of the Court's Local Rules does not provide for the opposing party to insert a response to a party's description of key evidence, and thus, the County's response is improper.

Fifth Affirmative Defense

Not applicable for the reason discussed above.

Sixth Affirmative Defense

Not applicable for the reason discussed above.

Seventh Affirmative Defense

Not applicable for the reason discussed above.

Eighth Affirmative Defense

ICSOP has paid the County $9 million as reimbursement for costs the County allegedly has incurred in response to CAO 98-96.

Case 5:16-cv-00128-PSG-SS   Document 238-1   Filed 08/15/17   Page 21 of 36   Page ID
#:6423

Ninth Affirmative Defense

(1) The settlement agreements the County entered with the Water Companies required the County to assure that water produced from the Water Companies' wells meets the lowest concentration achievable by use of best available treatment technology currently or as hereafter required by any state or federal agency with jurisdiction over drinking water quality for any groundwater extraction well operated by the Water Companies. This agreement requires the County to treat groundwater even after contaminant levels are below Maximum Contaminant Levels ("MCL") set by federal or state agencies. The settlement agreements with the Water Companies do not provide the County with any means or method by which to terminate obligations under the agreements.

(2) As a result of the County's agreements with the Water Companies, the costs the County will incur for operation and maintenance of the corrective action system will exceed by approximately $3.1 million what the County would have incurred had it agreed to treat water until contaminants of concern fall below the MCL.

Tenth Affirmative Defense

(1) The settlement agreements the County entered with the Water Companies required the County to assure that water produced from the Water Companies' wells meets the lowest concentration achievable by use of best available treatment technology currently or as hereafter required by any state or federal agency with jurisdiction over drinking water quality for any groundwater extraction well operated by the Water Companies. This agreement requires the County to treat groundwater even after contaminant levels are below Maximum Contaminant Levels ("MCL") set by federal or state agencies. The settlement agreements with the Water Companies

do not provide the County with any means or method by which to terminate obligations under the agreements.

(2) As a result of the County's agreements with the Water Companies, the costs the County will incur for operation and maintenance of the corrective action system will exceed by approximately $3.1 million what the County would have incurred had it agreed to treat water until contaminants of concern fall below the MCL.

Eleventh Affirmative Defense

Not applicable for the reason discussed above.

Fourteenth Affirmative Defense

(1) The County alleges that it provided notice of the claims for which it now seeks coverage to ICSOP in 1997 through the submission of a pollution legal liability insurance policy application, that ICSOP should have investigated and advised the County of whether the claims were covered under the ICSOP Policies, that ICSOP should have paid the claim at that time and that ICSOP's failure to do so breached its obligations to the County.  The County alleges that it incurred over $26.2 million between 1995 and August 27, 2014.

(2) This action was filed on January 21, 2016 and the County filed its counterclaim on March 18, 2016, more than four years after the County alleges it provided notice to ICSOP of the claims and after the County began incurring costs in connection with the claims.

## 8.    ISSUES REMAINING TO BE TRIED

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried: (1) whether the property damage identified in the Order for which the County seeks coverage was caused by an occurrence or occurrences as that term is defined in the

ICSOP Policies; (2) the number of occurrences that caused the property damage identified in the Order; (3) whether any or all of the property damage identified in the Order for which the County seeks coverage took place during the period of the ICSOP Policies (the County does not agree with this formulation); (4) whether ICSOP's refusal to provide coverage for the County's claim arising out of its obligations related to the Order constituted a breach of the ICSOP Policies; and (5) whether the County's claims are barred by the applicable statutes of limitations (the County does not agree this is an issue to be tried because under California law the statute of limitations on the County's claim has not, even now, begun to run).

### 9.    DISCOVERY

All discovery is complete.

### 10.    DISCLOSURES

All disclosures under F. R. Civ. P. 26(a)(3) have been made.

The parties have exchanged amended exhibit lists, and the joint exhibit list of the parties will be filed under separate cover as required by L.R. 16-6.1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

ICSOP objects to Exhibit Nos.  44, 58, 60,63,  102, 123,  206-207,209-213, 215-223, 226-227, 245-247, 253-255, 258-265, 268, 270, 281-282, 284-285, 287, 289, 291-300, 302-305, 308-316.  The objections and grounds therefor are:

| No. of Exhibit | Description | Objection |
|---|---|---|
| 44 | July 29, 2016 ICSOP's Responses to 1st Set Rogs [Nos. 1-5] with Verification | ICSOP objects FRE 401-403 |
| 58 | ICSOP Severity Claim-Set Notes (ISOP 005632-5634) | ICSOP objects FRE 401-403 |

| 60 | April 8, 2016 ICSOP's Answer to Complaint | ICSOP objects FRE 401-403 |
|----|----|----|
| 63 | November 8, 2016 ICSOP's Responses to 2d Set Rogs [Nos. 6-16] with Verification | ICSOP objects FRE 401-403 |
| 102 | June 5, 2015 Letter from McCurdy re Schulz | ICSOP objects FRE 401-403 |
| 123 | May 9, 2017 Expert Report of Jeffrey H. Kinrich including exhibits and appendices | ICSOP objects FRE 801-802 |
| 206 | July 29, 2016 ICSOP Responses to 1st RFAs [Nos. 1-31] | ICSOP objects FRE 401-403 |
| 207 | July 29, 2016 ICSOP Responses to 1st RFPs [Nos. 1-23] | ICSOP objects FRE 401-403 |
| 209 | July 29, 2016 ICSOP Responses to 2nd RFPs [Nos. 23-32] | ICSOP objects FRE 401-403 |
| 210 | September 13, 2016 ICSOP Suppl Responses to 1st RFPs  [1-23] | ICSOP objects FRE 401-403 |
| 211 | September 14, 2016 ICSOP Suppl Responses to 1st RFAs [11, 12, 29, 30] | ICSOP objects FRE 401-403 |
| 212 | September 15, 2016 ICSOP Responses to 3rd RFPs [33-51] | ICSOP objects FRE 401-403 |
| 213 | September 22, 2016 ICSOP's 2nd Supplemental Responses to 1st RFAs [No. 14] | ICSOP objects FRE 401-403 |
| 215 | November 8, 2016 ICSOP's Responses to 2nd Set RFAs [32-61] | ICSOP objects FRE 401-403 |
| 216 | May 1, 2017 ICSOP's Responses to 3rd Set of RFAs [62-88] | ICSOP objects FRE 401-403 |
| 217 | May 1, 2017 ICSOP's Responses to 3rd Set Rogs [17-25] | ICSOP objects FRE 401-403 |
| 218 | May 1, 2017 ICSOP's Responses to 4th Set RFPs [52-63] | ICSOP objects FRE 401-403 |

| 219 | June 7, 2016 ICSOP's Amended Initial Disclosures | ICSOP objects FRE 401-403 |
| 220 | May 12, 2017 ICSOP's Expert Witness Disclosures | ICSOP objects FRE 401-403 |
| 221 | June 9, 2017 ICSOP's Rebuttal Expert Disclosure | ICSOP objects FRE 401-403 |
| 222 | May 10, 2017 Expert Report of John E. Edwards including appendices | ICSOP objects FRE 801-802 Legal opinion |
| 223 | May 12, 2017 Expert Report of Theodore V. Hromadka, II including figures and appendices | ICSOP objects FRE 801-802 *Daubert* |
| 226 | June 9, 2017 Rebuttal Expert Report of Theodore V. Hromadka, II including figures and appendices | ICSOP objects FRE 401-403 FRE 801-802 *Daubert* |
| 227 | June 7, 2017 Rebuttal Expert Report of John E. Edwards | ICSOP objects FRE 801-802 Legal opinion |
| 245 | Bechtel, 1993, Expanded Site Inspection, Site EPA ID Number: CAT 080029630, December 9, 1993 (COUNTY00050963-50993) | ICSOP objects FRE 401-403 |
| 246 | CH2MHill, 2006, Modeling the Fate of a Perchlorate Release at the 160-Acre Parcel in Rialto, California (COUNTY00083126-83140) | ICSOP objects Untimely production |
| 247 | Dames & Moore, 1992. Stormwater Pollution Prevention Plan for Stormwater Runoff.  September 1992. (COUNTY00083141-83167) | ICSOP objects Untimely production |

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

| | | | |
|---|---|---|---|
| | 253 | Geo-Logic Associates, 2007, Final Closure Plan Former Broco Treatment, Storage, & Disposal Facility.  March 2007 (COUNTY00067355-68324) | ICSOP objects FRE 401-403 |
| | 254 | Ravi, V., Johnson, J. A., 1997, VLEACH A one-dimensional finite difference vadose zone leaching model, Version 2.2, Center for Subsurface Modeling Support, USEPA RSKERL, Ada, OK (COUNTY00083168-83237) | ICSOP objects Untimely production |
| | 255 | Rosenbloom, J. et al., 1993, Application of VLEACH to vadose zone transport of VOCs at an Arizona superfund site, Ground Water Monitor. Remed. (COUNTY00083238) | ICSOP objects Untimely production |
| | 258 | SB County Solid Waste Management Department, 1991. Drainage & Erosion Control Construction at Mid-Valley Landfill for the County of San Bernardino, September1991 (COUNTY00083239-83248) | ICSOP objects FRE 401-403 Untimely production |
| | 259 | SB County Solid Waste Management Division, 2001. Fill Sequence Plan Unit 2 Phase 3, August 2001 (COUNTY00083250) | ICSOP objects FRE 401-403 Untimely production |
| | 260 | SB County Solid Waste Management Division, 2001. Fill Sequence Plan Unit 1 Phase 1, August 2001 (COUNTY00083249) | ICSOP objects FRE 401-403 Untimely production |

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

| 261 | United States 96th Congress, House of Representatives, Committee on Interstate and Foreign Commerce Subcommittee on Oversight and Investigations, Waste Disposal Site Survey Report together with Additional and Separate Views, October 1979 (COUNTY00083251-83790) | ICSOP objects FRE 401-403 Untimely production |
| --- | --- | --- |
| 262 | United States 96th Congress, House of Representatives, Committee on Interstate and Foreign Commerce Subcommittee on Oversight and Investigations, Waste Disposal Site Survey Report together with Additional and Separate Views, October 1979 – Waste Disposal Site Survey – Forms A through D (COUNTY00083791-83833) | ICSOP objects FRE 401-403 Untimely production |
| 263 | Historical Aerial Photograph (Appendix D for Hromadka Expert Report) | ICSOP objects FRE 901 |
| 264 | Historical Topographic Maps (Appendix C for Hromadka Expert Report) | See objections to 223 FRE 901 |
| 265 | April 16, 2007 Declaration of Gary Lass in the matter of Perchlorate contamination at a 160-acre site in the Rialto area. (COUNTY00083834-83838) | ICSOP objects FRE 401-403 FRE 801-802 Untimely production |
| 268 | San Bernardino County, Auditor Division (COUNTY00059082) | ICSOP objects FRE 401-403 |
| 270 | July 14, 2014 Deposition of Claudia Rozzi | ICSOP objects that this is testimony, not a proper exhibit |

| | | | |
|---|---|---|---|
| 281 | Cal Recycle: Facility/Site Summary Details: Mid-Valley Sanitary Landfill, available at: http://www.calrecycle.ca.gov/SWF acilities/Directory/36-AA-0055/Detail (COUNTY00083839-83840) | ICSOP objects<br>Untimely production | |
| 282 | April 21, 2017 Deposition of Ken Hernandez | ICSOP objects that this is testimony, not a proper exhibit | |
| 284 | April 26, 2017 Deposition of Michele Mehl | ICSOP objects that this is testimony, not a proper exhibit | |
| 285 | April 27, 2017 Deposition to Royce Knight | ICSOP objects that this is testimony, not a proper exhibit | |
| 286 | January 25, 2008 Letter from Schulz to Foggan (COUNTY00050831-50833) | ICSOP objects FRE 401-403<br>Settlement communication | |
| 287 | April 28, 2017 Deposition of Gerry Newcombe | ICSOP objects that this is testimony, not a proper exhibit | |
| 289 | December 29, 2014 Claims Handling Guidelines and Policy (LM022372-22395) | ICSOP objects FRE 401-403 | |
| 291 | October 29, 2004 Fontana Water Company letter to CA Regional Water Quality Control Board (COUNTY00082911-82969) | ICSOP objects<br>Untimely production | |
| 292 | MVSL - Historical Summary - Monitoring Well F-4 (Abandoned) (COUNTY00082970) | ICSOP objects<br>Untimely production<br>Incomplete | |
| 293 | Well Data - F-10A (COUNTY00082971-82982) | ICSOP objects<br>Untimely production<br>FRE 901 | |
| 294 | Well Data - F-10B (COUNTY00082983-82986) | ICSOP objects<br>Untimely production<br>FRE 901 | |
| 295 | Well Data - F-10C (COUNTY00082987-82988) | ICSOP objects<br>Untimely production<br>FRE 901 | |

| | 296 | Fontana Water Company Water Well Levels Data - Well F-13A (COUNTY00082989-82993) | ICSOP objects Untimely production FRE 901 |
|---|---|---|---|
| | 297 | Well Data - #35 (COUNTY00082994-83001) | ICSOP objects Untimely production FRE 901 |
| | 298 | Well Data - F-49A (COUNTY00083002-83003) | ICSOP objects Untimely production FRE 901 |
| | 299 | Figure 4 - Combined Pumping in Model Area by City of Rialto, FWC, and WVWD (COUNTY00083004-83013) | ICSOP objects Untimely production FRE 901 |
| | 300 | FWC - Historical Summary Data - Monitoring Well F-10B (COUNTY00083014-83081) | ICSOP objects Untimely production FRE 901 Incomplete |
| | 302 | January 7, 1958 County Grant Deed (COUNTY00083841-83842) | ICSOP objects Untimely production |
| | 303 | August 9, 1971 County Trustee's Deed (COUNTY00083843-83845) | ICSOP objects Untimely production |
| | 304 | August 28, 1972 County Grant Deed (COUNTY00083848-83849) | ICSOP objects Untimely production |
| | 305 | June 15, 1973 County Grant Deed (COUNTY00083846-83847) | ICSOP objects Untimely production |
| | 308 | County Backup Costs (COUNTY00012213-16325) | ICSOP objects as "exhibit" consists of thousands of pages containing multiple documents that are not properly described FRE 401-403 |
| | 309 | County Backup Costs (COUNTY00016326-18200) | ICSOP objects as "exhibit" consists of thousands of pages containing multiple documents that are not properly described FRE 401-403 |

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

| 310 | County Backup Costs (COUNTY00018259-23285) | ICSOP objects as "exhibit" consists of thousands of pages containing multiple documents that are not properly described FRE 401-403 |
| 311 | County Backup Costs (COUNTY00023286-23596) | ICSOP objects as "exhibit" consists of hundreds of pages containing multiple documents that are not properly described FRE 401-403 |
| 312 | County Backup Costs (COUNTY00023597-24055) | ICSOP objects as "exhibit" consists of hundreds of pages containing multiple documents that are not properly described FRE 401-403 |
| 313 | March 14, 2017 Roux Associates, Inc. Expert Retention Agreement | ICSOP objects FRE 401-403 |
| 314 | March 17, 2017 Roux Associates, Inc. Invoice | ICSOP objects FRE 401-403 |
| 315 | April 14, 2017 Roux Associates, Inc. Invoice | ICSOP objects FRE 401-403 |
| 316 | May 12, 2017 Roux Associates, Inc. Invoice | ICSOP objects FRE 401-403 |

The County objects to Exhibit Nos. 41, 51, 67, 70, 72-76, 78-79, 101, 114, 201-202, 229, 270, 282, 284-285, 287-288, 307, and 317.  The objections and grounds therefor are:

| No. of Exhibit | Description | Objection |
| --- | --- | --- |
| 41 | Verified Petition for Writ of Mandate (COUNTY00024495-24516) | County objects: Irrelevant, FRE 401-403; Hearsay (FRE 802) if ICSOP relies on statements in petition |

| 51 | July 31, 2015 Letter from County to ICSOP (COUNTY00006628- 6630) | County objects: FRE 401-403 (settlements not broader than Order) |
|----|----|----|
| 67 | May 3, 1995 Letter from GeoLogic Associates ("Geologic") to County (COUNTY00008697-8701_ | County objects: incomplete |
| 70 | February 20, 1998 Memo from Gary Kovall and Joel Moskowitz to Conway Collis (COUNTY00012080-12081) | County objects: FRE 401-403 FRE 408 FRE 901 Privileged |
| 72 | September 1, 1998 Email and attachment from Gary Kovall to Gindler Burton (COUNTY00011304-11308) | County objects: FRE 401-403 (including settlements not broader than Order) |
| 73 | September 15, 1998 Interoffice memo from Gerry Newcombe to the Board of Supervisors (COUNTY00011295-11296) | County objects: FRE 401-403 (including settlements not broader than Order) |
| 74 | October 6, 1998 Facsimile from Dixie Lass to Gerry Newcombe and attachment (COUNTY00051173-51180) | County objects: FRE 401-403 FRE 901 incomplete |
| 75 | November 10, 1998 Report/recommendation by County | County objects: FRE 401-403 (including settlements not broader than Order) |

| | | |
|---|---|---|
| 76 | February 2, 2000 Interoffice memo from Gerry Newcombe to John Goss (COUNTY00051302-51303) | County objects:<br>FRE 401-403 (including settlements not broader than Order) |
| 78 | November 17, 1998 Report/recommendation by County | County objects:<br>FRE 401-403 (including settlements not broader than Order) |
| 79 | May 16, 2000 Report/Recommendation to Board of Supervisors enclosing Fontana Union Water Settlement Agreement | County objects:<br>FRE 401-403 (including settlements not broader than Order) |
| 101 | May 10, 2017 Expert Report of Adam H. Love, Ph.D. including exhibits [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
| 114 | June 6, 2017 Expert Rebuttal Report of Adam H. Love, Ph.D. [subject to objection] | The County will object to witness testimony and report under *Daubert* and legal opinion |
| 201 | May 12, 1998 Letter from Terry Cook to Conway Collis (COUNTY00051269) | County objects:<br>FRE 401-403<br>FRE 901 |
| 202 | May 15, 1998 Letter from Conway Collis to Fontana Water Company (COUNTY00012053-12054) | County objects:<br>FRE 401-403<br>FRE 901; incomplete |
| 229 | June 6, 2017 Rebuttal Expert Report of Adam H. Love, Ph.D. [subject to objection] | The County will object to witness testimony and report under Daubert and legal opinion |

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

| | | |
|---|---|---|
| 270 | July 14, 2014 Deposition of Claudia Rozzi | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 282 | April 21, 2017 Deposition of Ken Hernandez | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 284 | April 26, 2017 Deposition of Michele Mehl | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 285 | April 27, 2017 Deposition to Royce Knight | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 287 | April 28, 2017 Deposition of Gerry Newcombe | Subject to County objections stated and/or made at trial ICSOP objects that this is testimony, not a proper exhibit |
| 288 | September 1, 1998 Letter from G. Kovall to T. Ryan COUNTY00011305-11308) | County objects: FRE 401-403 (including settlements not broader than Order) |
| 307 | June 15, 2017 Deposition of Adam H. Love, Ph.D. [subject to objection] | Subject to County objections stated and/or made at trial as well as *Daubert* and legal opinion objections |

| 317 | Numerical Groundwater Flow Model Report, Rialto Colton Basin, June 2012 CH2MHILL | County objects: FRE 401-403 |
|-----|-----|-----|

## 11.   WITNESS LISTS

The parties have exchanged amended witness lists, and an amended joint witness list will be filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

The County has marked depositions it may present as evidence in accordance with L.R. 16-2.7.  ICSOP has marked depositions it may present as evidence in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: Michele Mehl, Royce Knight, and Gerry Newcombe.

Both parties object to the presentation of deposition testimony that does not satisfy the requirements of FRCP 32(a).

## 12.   LAW AND MOTION MATTERS AND MOTIONS IN LIMIINE

The County has filed the following motions: (1) County motion in limine to exclude testimony and related evidence of Walter J. Lipsman (now moot); (2) County motion in limine to exclude or limit testimony and related evidence of Dr. Adam Love's first and second opinions; (3) County motion in limine to exclude or limit testimony and related evidence of Dr. Adam Love's third, fourth, and fifth opinions; (4) County motions in limine to exclude or limit testimony and evidence of James A. Robertson (now moot); (5) County motion in limine to exclude non-disclosed evidence; (6) County motion in limine to exclude mediation communications and notice issues (now moot); (7) County motion in limine to exclude testimony and evidence contrary to California law; (8) County motion in limine to exclude testimony and evidence contrary to the Policy language; (9)

County motion in limine to exclude evidence of prejudice (now moot); (10) County motion in limine regarding lost documents (now moot); (11) County motion in limine to preclude experts from testifying as to legal opinions; and (12) County motion in limine re: no references to anti-stacking order by the Court and related items.

ICSOP has filed the following motions: (1) ICSOP motion in limine to exclude testimony of Ken Hernandez (now moot); (2) ICSOP motion in limine to exclude testimony of Mitchell Lathrop (now moot); (3) ICSOP motion in limine to exclude testimony of James Falbo (now moot); (4) ICSOP motion in limine to preclude or limit testimony of Theodore Hromadka; (5) ICSOP motion in limine to preclude use of documents produced after discovery cutoff date.

**13.** The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: _____, 20_____.

_____
Hon. Philip S. Gutierrez

1

2

Approved as to form and content.

3

4

5   */s/Kevin G. McCurdy*

6   Kevin G. McCurdy, Attorney for ICSOP

7

8

9   */s/Marc S. Maister*

10   Marc S. Maister, Attorney for the County

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER